**In re Laurel ROEMIG and John Roemig, Debtors.**

**Steve H. MAZER, trustee, Plaintiff,**

v.

**BROADWAY SOUTHWEST, Defendant.**

**Bankruptcy No. 7–90–00117 MA.**
**Adv. 90–0135 M.**

United States Bankruptcy Court,
D. New Mexico.

Jan. 16, 1991.

---

Steve H. Mazer, Albuquerque, N.M., for plaintiff.

Peter R. Moughan, Jr., Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Chief Judge.

This matter came before the Court on the Trustee's complaint for turnover of a payment made on a retail installment account with Broadway Southwest. The parties stipulated to the facts and submitted briefs to present their legal arguments to the Court. Upon the Court's request, Broadway Southwest supplemented the record with the itemization of the debtor's account. Having considered the supplemental information, the briefs, the applicable law, and being otherwise fully informed and advised, the Court finds the complaint is well taken and judgment should be entered for the trustee.

### FACTS

1. Laurel and John Roemig (debtors), applied for and received an open retail installment account credit card with Broadway Southwest (Broadway), on January 3, 1988.

2. The credit card agreement provided that the debtors were to make a minimum monthly payment. The balance of the account was subject to a finance charge.

3. The purchases and payments on the account between February 1988 and January 1990 are as follows [1]:

---

**1.** The itemization of account provided by Broadway separates purchases and payments from the "Option Account" and the "Homemaker Account" even though only one card is used for both accounts and the buyer does not designate payments to one account or the other. The different accounts have different rates of inter-

| Date | Charges | Balance | Payment |
|---|---|---|---|
| 2–2–88 | $ 354.95 | $ 302.35 | $ 0.00 |
| 3–2–88 | 398.55 | 575.03 | 100.00 |
| 4–2–88 | 355.03 | 737.30 | 200.00 |
| 5–2–88 | 166.91 | 614.84 | 300.00 |
| 6–2–88 | 136.04 | 635.51 | 125.00 |
| 7–2–88 | 211.21 | 620.10 | 235.00 |
| 8–28–88 | 35.70 | 515.47 | 150.00 |
| 9–28–88 | 288.20 | 737.30 | 55.00 |
| 10–28–88 | 1,630.43 | 2,305.36 | 75.00 |
| 11–28–88 | 252.71 | 2,443.20 | 155.00 |
| 12–28–88 | 255.67 | 2,566.11 | 175.00 |
| 1–28–89 | 0.00 | 2,187.77 | 190.00 |
| 2–28–89 | 52.34 | 2,117.76 | 160.00 |
| 3–28–89 | 88.20 | 2,042.65 | 200.00 |
| 4–28–89 | 590.95 | 2,509.16 | 160.00 |
| 5–28–89 | 157.86 | 2,530.51 | 180.00 |
| 6–28–89 | 378.67 | 2,768.15 | 185.00 |
| 7–28–89 | 276.80 | 2,719.22 | 215.00 |
| 8–28–89 | 277.59 | 2,814.00 | 230.00 |
| 9–28–89 | 575.05 | 3,152.60 | 245.00 |
| 10–28–89 | 212.05 | 3,164.68 | 255.00 |
| 11–28–89 | 226.21 | 3,180.97 | 265.00 |
| 12–28–89 | 425.39 | 3,391.87 | 270.00 |
| 1–28–90 | 41.70 | 62.01 | 3,391.87 |

4. The debtors made payments equal to or greater than the minimum monthly payment during this time period.

5. The debtors did not make a payment which paid the balance of the account in full between February 1988 and November 1989.

6. The balance due on the debtors account with Broadway was $3,391.87 on December 28, 1989.

7. On December 30, 1989, the debtors paid $3,391.87 on the Broadway account.

8. On December 30, 1989, the debtors made a purchase on their credit card account in the amount of $41.70.

9. The debtors filed for relief under Chapter 7 of the Bankruptcy Code on January 16, 1990.

## DISCUSSION

In their brief, Broadway does not deny that the elements of a preferential transfer are met.[2] Instead, Broadway argues that the trustee cannot avoid the transfer be-

est. For purposes of this motion, the accounts will be treated as one.

2. The trustee may avoid a transfer if the following elements are met:
   1) a transfer that the debtor has made to or for the benefit of a creditor;
   2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   3) made while the debtor was insolvent;
   4) made on or within 90 days before the date of the filing of the petition;
   5) that enables such creditor to receive more than such creditor would receive if
      (A) the case were under chapter 7 of this title;
      (B) the transfer had not been made; and

cause the payment fits into the "contemporaneous exchange for new value" or, alternatively, "ordinary course of business" exceptions found in 11 U.S.C. § 547(c)(1) and (2).[3] Broadway's arguments will be dealt with separately.

### I. Was the transfer a contemporaneous exchange for new value?

Broadway argues that "new value, that is new credit" was given to the debtors when they made the December payment on their Broadway Southwest account. Def. Brief, at 4. Further, Broadway argues that the exchange was substantially contemporaneous and that the requisite intent that the exchange be contemporaneous was present. *Id.*

The principle underlying the Code's provisions for recovery of preferential payments is that one creditor's claim should not be favored at the expense of other creditors. The Code does recognize that some situations warrant an exception to the general rule. The "contemporaneous exchange for new value" exception acknowledges that if a creditor contributes new value in return for payments, those payments will not be deemed to have depleted the estate to the disadvantage of other creditors. *Drabkin v. A.I. Credit Corp.*, 800 F.2d 1153, 1156 (D.C.Cir.1986). The new value into the estate replaces the payments made from the estate and theoretically the estate has not been affected.

The Code provides that, " 'new value' means money or money's worth in … new credit…." 11 U.S.C. § 547(a)(2). Broadway argues that when the debtors made a payment on the account, new credit was extended in exchange for the payment.

The leading case in preference actions regarding credit card accounts is *In re Rustia*, 20 B.R. 131 (Bankr.S.D.N.Y. 1982). In *Rustia*, as here, the trustee attempted to recover payments made on a credit card account. The creditor argued that each time a payment was made, there was new credit extended in the amount of the payment. The court rejected the argument.

Until the debtors actually avail themselves of that credit line by purchases or cash advances no new credit is extended. The availability of credit is not synonymous with the extension of credit; the estate is not augmented by the fact that the debtors' payments resulted in restoring their line of credit to the extent of the payments. Nothing of additional value was received that could be regarded as enhancing this estate so as to offset the payments that were made.

20 B.R. at 134. It is clear that payments made on credit card accounts cannot constitute new value unless the debtor actually makes use of the renewed credit line. *See In re Fulghum Construction Corp.*, 78 B.R. 146, 151 (M.D.Tenn.1987) (*rev'd on other grounds*, 872 F.2d 739 (6th Cir.1989)); *In re Vunovich*, 74 B.R. 629 (Bankr.Kan. 1987).

The party seeking to prevail in a preference action carries the burden of proof. The party must also prove the specific measure of the new value given to the debtors in exchange. *In re Jet Florida Systems, Inc.*, 861 F.2d 1555 (11th Cir. 1988). Broadway has carried its burden with respect to the specific measure of the new value given in the form of new credit in the amount of $41.70. On December 30,

---

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

**3.** 11 U.S.C. § 547(c)(1) and (2) provide:
(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;
(2) to the extent that such transfer was—
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms.

1989, the debtors paid the entire amount due on the account, $3,391.87. On the same day, the debtors made a purchase in the amount of $41.70, thereby availing themselves of the credit line in the amount of $41.70. The trustee may not recover the $41.70. As to the remainder of the $3,391.87 payment, the transfer was not for new value in the form of new credit. Instead of new credit, the remaining amount of the transfer was credited to past debt. Thus, the trustee may recover $3,350.17.

II. Was the transfer made in the ordinary course of business?

■ The second exception which Broadway seeks to establish is that the payments were made in the ordinary course of business. Section 547(c)(2) has three requirements. Subsection (A) requires that the debt be in the ordinary course of the affairs of both the debtor and the transferee. *In re Finn*, 86 B.R. 902, 906 (Bankr.E.D. Mich.1988). The record of the Broadway account clearly shows a history of credit purchases by the debtors. The retail installment account agreement between the debtor and Broadway is the standard agreement used by Broadway. Therefore, the first requirement of § 547(c)(2) is met.

The second requirement is that the *payments* must be made in the ordinary course of business of the debtor or the transferee. 11 U.S.C. § 547(c)(2)(B). The trustee did not attempt to recover the October and November payments, which were both made within the preference period, thus appearing to acknowledge that they were made in the ordinary course of business. Unusual payment practices are suspect. *In re Craig Oil Co.*, 785 F.2d 1563 (11th Cir.1986). The retail installment account agreement provides, "[y]ou may pay the entire balance on any account or any portion thereof in excess of the minimum payment at any time." Broadway argues that the payment was in the ordinary course of business affairs because the agreement provides that the account may be paid in full at any time. This argument might have merit if the debtors had regularly paid the account in full. However, that is

not the case. The $3,391.87 payment of December 30, 1989, is anything but ordinary. Prior to the December 1989 payment the account had never been paid in full. Instead, the debtors had ordinarily paid an amount close to the minimum payment required, incurring finance charges each month. As such, Broadway cannot establish that the December 1989 payment was made in the ordinary course of business.

Failing to establish the second requirement, the third requirement that the transfer was made according to ordinary business terms need not be examined.

### CONCLUSION

The trustee may recover the December 30, 1989, payment of $3,391.87 less the amount of $41.70, representing new value in the form of new credit extended for a purchase on December 30, 1989, for a balance of $3,350.17 recoverable by the trustee as a preferential transfer.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

An appropriate order shall enter.