In re Andrew V. SPITLER and Jennifer Spitler, Debtors.

Louis J. YOPPOLO, Trustee, Plaintiff,

v.

GREENWOOD TRUST CO., Defendant.

Bankruptcy No. 97–3068.
Related No. 96–33661.

United States Bankruptcy Court,
N.D. Ohio.

Aug. 7, 1997.

Louis J. Yoppolo, Toledo, OH, Trustee/Plaintiff.

Thomas S. Douglas, Toledo, OH, Joel H. Rathbone, Cleveland, OH, for Defendant.

### MEMORANDUM OPINION
### AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Motions for Summary Judgment filed by the Plaintiff and Defendant. This Court has reviewed the arguments of counsel, exhibits, and the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Motion for Summary Judgment of the Defendant should be denied, that the Motion for Summary Judgment of the Plaintiff should be granted, and that the Debtors' payment to Defendant in the amount of Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10) is a preferential transfer that should be returned to the bankruptcy estate.

### FACTS

The facts in this case are not disputed. The Debtors had a credit card account with the Defendant beginning in October of 1995. There was no activity in the account from October of 1995 until April of 1996. In May of 1996 the Debtors had Nine Thousand Eight Hundred Forty-two Dollars ($9,842.00) of available credit on the Ten Thousand Dollar ($10,000.00) credit limit account with Defendant. On May 31, 1996 the Debtors transferred a debt balance of Nine Thousand Dollars ($9,000.00) on their AT&T credit card, and a balance of Five Hundred Dollars ($500.00) on the Fifth Third credit card onto the credit account offered by the Defendant. On July 3, 1996, the Debtors made a payment to the Defendant in the amount of Three Hundred Dollars ($300.00), and on August 7, 1996, the Debtors made a payment to the Defendant in the amount of Two Hundred and Fifty Dollar ($250.00). On September 5, 1996, the Debtors made a Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10) payment on the Defendant account by writing a convenience check on yet another credit account, First Union Visa Gold. The Debtors thereby consolidated the AT&T, Fifth Third, and Greenwood Trust accounts to First Union Visa Gold. In this adversary proceeding, the Trustee seeks to recover the September 5, 1996, payment of Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10).

### LAW

**11 U.S.C. § 547. Preferences**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title

(c) The trustee may not avoid under this section a transfer—

(1) to the extent the transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

## DISCUSSION

Proceedings to determine, avoid, or recover preferences are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

The Plaintiff argues that the September 5, 1996, payment of Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10) was a preference that should be returned to the bankruptcy estate pursuant to § 547. The Defendant makes a number of arguments against this assertion. First, Defendant argues that the transfer was not of "an interest of the debtor in property" as required per § 547(b). The Defendant cites the Supreme Court's explanation that "property of the debtor is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).[1] The Defendant looks to state law to determine that the Debtor never possessed legal title to the funds, but only had a contractual right to these funds for purchases, cash advances, etc. Also, the Defendant argues that by signing the check the Debtor never exercised dominion and control over those funds. The Defendant's second argument is similar to the first. The Defendant argues that the doctrine of earmarking should apply as a defense to the preference action, because the debt to First Union Visa Gold was incurred only to shift debt from one creditor to another, and thus no assets of the bankruptcy estate were diminished. Further, the Defendant again argues that the

Debtor did not exercise dominion and control over the funds. The Defendant's third and fourth arguments are that the payment was made in the ordinary course of business, and that there was a contemporaneous exchange for new value; which are defenses to a preference action explicitly provided for in § 547(c).

The Defendant's first and second arguments are so similar they can be addressed together. To the extent that Defendant argues that the property was not "an interest of the debtor in property" as a separate argument from the earmarking defense, this Court finds that the case law which has analyzed this expression under the earmarking doctrine is persuasive and controlling. The earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a "transfer of an interest of the debtor in property." *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561 (8th Cir.1988). This Court does not find it necessary to accept the Defendant's invitation to micro-analyze the Uniform Commercial Code as it relates to convenience checks. "In the bankruptcy setting, courts have held that transfers by a debtor of borrowed funds constitute transfers of the debtor's property." *Matter of Smith*, 966 F.2d 1527 (7th Cir.1992), citing *In re J.B. Koplik & Co.*, 114 F.2d 40, 42 (2d Cir.1940), *Bohlen*, 859 F.2d at 567, *Brown v. First Nat'l Bank*, 748 F.2d 490, 490 n. 6 (8th Cir.1984), and 4 *Collier on Bankruptcy* § 547.03, at 547–28 (15th ed.1992). Indeed, the scenario of a convenience check written on a credit account in this case is factually similar to the facts of *In re Montgomery*, 983 F.2d 1389 (6th Cir.1993), where a check was written by the debtor on an unauthorized line of credit made available to the debtor through a check kiting scheme, discussed infra.

The history of the doctrine of earmarking was explained by the Court in *Bohlen*, 859 F.2d at 564–566. The Court explained that it was and remains a judicially created concept. It was originally adopted in the scenario

---

1. Briefly summarized, in *Begier* the Supreme Court held that the debtor's transfer of "trust fund" taxes was not an avoidable preferential transfer because the funds were not actually the debtor's property but rather were funds withheld from employees and held in trust for the payment of taxes.

where guarantor of a debtor agrees to loan the debtor funds to repay the loan that the guarantor guarantees. If the payment made on the guaranteed loan were avoided as a preference, the result would be that the guarantor would have to repay the loan twice. This is because the money would be returned to the bankruptcy estate, not to the guarantor, and the guarantor would still have to make good on his guarantee of the debtor's first debt. In this scenario, where the guarantor's loan (the second loan) was made based on the condition that the funds would be used to repay the guaranteed loan (the first loan), it would clearly be inequitable to avoid the payment as a preference. That is, courts held that in this scenario the proceeds of the loan were not "an interest of the debtor in property" because of the condition placed on the loan by the new guarantor/lender. According to Eighth Circuit, this is how the doctrine should have remained. *Id.* at 566. However, the doctrine was expanded to encompass any situation where a subsequent loan was made on the condition that it be used to repay an existing loan. Thus, the determinative issue in earmarking became whether the debtor exercised dominion and control over the loan proceeds. If he has, then this shows that the proceeds were not "earmarked" by the new lender for repayment of the first loan, and therefore the proceeds were "an interest of the debtor in property" and can be avoidable under § 547. It is this element of dominion and control which is at issue in the case at bar.

■ This Sixth Circuit Court of Appeals has addressed this issue in *In re Montgomery,* 983 F.2d 1389 (6th Cir.1993), mentioned supra. See also *In re Hartley,* 825 F.2d 1067 (6th Cir.1987). In *Montgomery,* the debtor had concocted an elaborate check kiting scheme, the result of which was unauthorized loans from several banks which were used in part to repay almost completely certain debts to the defendant bank. The Court concluded that because the debtor had control to pay whichever creditor he wished, the earmarking doctrine would not apply as a defense to the preference action. The Court quoted the Seventh Circuit Court of Appeals explaining:

The real question here is whether the Debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property. Although the Bank was not statutorily required to extend provisional credit, it nevertheless did so ... By itself, such a provisional credit might not evidence an interest of the Debtor in property; but the Debtor exercised dominion and control over the funds by making actual payment to a creditor. The Debtor surely had something of value during the period when the Bank was extending the provisional credit. Instead of writing [one] check ... the Debtor could have written several checks, paying off each of its creditors on a pro rata basis. Alternatively, the Debtor could have purchased a 40–foot yacht. The point is that the debtor exercised significant control (over a significant amount of money) in choosing to pay off a single creditor.

*Montgomery,* 983 F.2d at 1395, quoting *Matter of Smith,* 966 F.2d 1527, 1531 (7th Cir.), *cert. dismissed,* 506 U.S. 1030, 113 S.Ct. 683, 121 L.Ed.2d 604 (1992). Thus, it is apparent that for the earmarking doctrine to apply it must be the new creditor, not the debtor, who stipulates as a condition of the loan that the proceeds be used to pay the pre-existing loan. *Montgomery,* 983 F.2d at 1395 ("[W]here the borrowed funds have been specifically earmarked *by the lender* for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor") (emphasis added.)

■ From this precedent it becomes abundantly clear that the payment at issue in this case is a recoverable preference. The Debtor had dominion and control over the use of the credit proceeds, and could have used the proceeds of such credit to pay any number of creditors, or simply kept the money himself and bought a boat (the 40-foot yacht would still have been out of reach). See *Montgomery,* 983 F.2d at 1395 (Court followed *Smith* and held that the debtor had a similar measure of control because he could have paid off other creditors, or bought a 40-foot yacht). By selecting to repay Defendant, the Debtor

made a preferential payment that should be returned to the bankruptcy estate for a more equitable distribution.

This precise issue was also addressed by the Court in *In re Severn*, 1996 WL 628045 (Bankr.N.D.Ohio). In *Severn*, as in this case, the bankruptcy trustee sought the return on a payment made by the debtors on a credit card account made through the use of a convenience check drawn on another credit card account of the debtors. The Court explained that the earmarking doctrine requires that the party making the loan choose the recipient of the funds, and that it was the debtors who had chosen the recipient in that case. *Id.* at 2. The Court further explained:

> Under the earmarking doctrine, whether the transfer is made to the old creditor directly or through the debtor as a conduit is irrelevant. *Coral Petroleum*, 797 F.2d at 1356. Thus, the substance of the transfer, not its form, is dispositive. The key issue is whether the debtor had sufficient ability to control the distribution of the loan proceeds. In the present case, if the debtors had made the convenience check payable either to themselves or to cash, deposited the check in their bank account and then drawn a check on that bank account payable to [the preferred creditor], the transfer to [the preferred creditor] would represent property of the estate. The court finds no reason for distinguishing the form of the actual transfer at issue from the less direct transfer outlined above.

*Id.*

Defendant also argues that the return of this preferential payment is unfair because the payment of Defendant through the use of the convenience check on the credit account at First Union Visa Gold did not diminish property of the bankruptcy estate that would have been available to creditors, but rather was only the shifting of debt from one creditor to another. As noted supra, the Defendant cites *Begier*, 496 U.S. at 58, 110 S.Ct. at 2262–2263, for the proposition that the estate must have been diminished. A similar argument was rejected by the Court in *Montgomery*. The Court explained:

> As we have already explained, however, it seems to us that the debtors' estate was depleted here when the debtors elected to use the proceeds of unauthorized loan obtained from other banks to discharge their indebtedness to [the preferred creditor]. The assets obtained by kiting checks at [the substituted creditors] were clearly in [the debtor's] control, and his use of such assets to grease the squeaky wheel at [the preferred creditor] constituted a preferential transfer.

*Montgomery*, 983 F.2d at 1396. The Court also held that there was no inconsistency with *Begier*, that *Begier* was a trust fund case, and that the Seventh Circuit's *Smith* decision came well after the *Begier* decision. *Id.* This issue was also thoroughly addressed in *Smith*, 966 F.2d at 1536.

■ The Defendant's ordinary course of the business and contemporaneous exchange for new value arguments require little discussion. The crux of Defendant's ordinary course of business argument is that the payment of the entire balance of the Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10) debt was ordinary, because according to the terms of the credit arrangement, the Debtor could pay the balance at any time. Were this the law, preference actions would be limited to only those cases where the debtor pays off a loan contrary to its terms. This is not the analysis called for in *In re Tennessee Chemical Co.*, 112 F.3d 234 (6th Cir.1997) and *In re Carled, Inc.* 91 F.3d 811 (6th Cir.1996). In the present case, the Debtor incurred large amounts of debt which appear beyond his ordinary ability to repay. Also, the card had not been used by the Debtor from the time the Debtor obtained the credit account in October of 1995 until April of 1996, when some purchases were made. Then, within a couple months, the Debtors brought the balance on the credit account near its limit, and then shortly thereafter paid if off completely not out of their ordinary income, but by drawing on another credit account. There was simply nothing ordinary about the payment in this case.

■ The Debtor's contemporaneous exchange for new value argument also fails. It

appears to be the Defendant's position that there was contemporaneous exchange for new value to the extent that the Debtor made purchases and incurred charges other than the Nine Thousand Five Hundred Dollar ($9,500.00) balance transfer. The Plaintiff counters that, "It is clear that payments made on a credit card account cannot constitute new value unless the debtor actually makes use of the renewed credit line." *In re Roemig,* 123 B.R. 405, 408 (Bankr.D.N.M. 1991). Without reaching the issue of whether or when the use of the renewed credit line will constitute new value, this Court agrees with the Plaintiff that there was no new value provided for in return for the payment at issue in this case, where no new purchases were made after the payment at issue.

For all these reasons, this Court concludes that the payment at issue in this case was preferential. The Plaintiff has also requested prejudgment interest. "In the absence of a statutory provision to the contrary, prejudgment interest may be generally awarded if 1) the award of prejudgment interest would serve to compensate the injured party, and 2) the award of prejudgment interest is otherwise equitable. In bankruptcy proceedings, the courts have traditionally awarded prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer from the time the demand is made or an adversarial proceeding is initiated unless the amount of the contested payment was undetermined prior to the bankruptcy court judgment." *In re Investment Bankers, Inc.,* 4 F.3d 1556, 1566 (10th Cir.1993) (citations omitted). See also *Montgomery,* 983 F.2d at 1396, *Smith v. Mark Twain Nat. Bank,* 805 F.2d 278, 291 (8th Cir.1986). Thus, the Plaintiff in this case is entitled to prejudgment interest from the date of demand, February 3, 1997.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment be, and is hereby, *DENIED.*

It is **FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment be, and is hereby, *GRANTED,* and that the Plaintiff may recover from the Defendant the principal amount of Nine Thousand Nine Hundred Fifty and 10/100 Dollars ($9,950.10), and that prejudgment interest is hereby awarded to the Plaintiff from February 3, 1997.