**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 30, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

BOBBY LEE SMITH,

    Plaintiff - Appellant,

v.

OKLAHOMA ATTORNEY GENERAL'S
OFFICE; GENTNER DRUMMOND;
MICHAEL JAMES HUNTER; NIKKI
KIRKPATRICK; HOPE BRYANT; JOHN
AND JANE DOES 1-10,

    Defendants - Appellees.

No. 25-6169
(D.C. No. 5:25-CV-00588-JD)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

On June 2, 2025, Plaintiff–Appellant Bobby Lee Smith filed a complaint

against "the Oklahoma Attorney General's Office . . . and its agents," alleging

"malicious prosecution, defamation, constitutional violations, and administrative

obstruction." ROA at 6. His complaint was accompanied by an application to proceed

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

in forma pauperis ("IFP") under 28 U.S.C. § 1915. In the IFP application and accompanying affidavit, Mr. Smith asserted that (1) his average monthly expenses totaled approximately $2,760, including $1,800 for rent; (2) he had "no consistent source of income"; (3) he had previously declared bankruptcy, and the bankruptcy was finalized in 2024; (4) he had $36,000 in a Coinbase account, $4,900 in a Robinhood account, and $1,100 on a Cash App debit card; (5) the $4,900 in his Robinhood account was "[l]oaned [m]oney"; (6) the $36,000 in his Coinbase account was "the remaining portion of a $200,000 private loan" issued in November 2024; and (7) he had "us[ed] the bulk of th[is] loan to cover housing, living expenses, and legal filing costs." Dist. Ct. Dkt. No. 2 at 2, 6–7.

On June 5, 2025, the magistrate judge recommended denying the IFP application based on the funds in Mr. Smith's three accounts, which the magistrate judge determined were "sufficient to meet both the mandatory demands on his financial resources and to pay the $405.00 filing fee." ROA at 283.

On June 13, 2025, Mr. Smith filed an objection to the magistrate judge's report and recommendation. In his objection, he made several factual assertions that were not included in his IFP application. Among other things, he claimed for the first time that he "owe[d] $13,257 in back rent." *Id.* at 286. He did not explain, however, why he would owe any money in back rent given his previous allegation that he received a $200,000 loan in November 2024, "the bulk of" which he had used to "cover housing" and other expenses. Dist. Ct. Dkt. No. 2 at 7.

2

On September 12, 2025, the district court overruled Mr. Smith's objections and denied his IFP application.

On September 22, 2025, Mr. Smith filed a motion in which he renewed his IFP application and asked the district court to reconsider its order denying IFP. He stated that this motion was "based on [his] current financial status as of September 22, 2025, reflecting further depletion since the June 2025 Report and Recommendation." ROA at 293. He asserted that he had "avoided eviction only by transferring all cryptocurrency in his Robinhood and Coinbase accounts to the landlord in exchange for rent coverage through October 31, 2025." *Id.* at 294. Again, however, he failed to explain why he owed so much money for rent when he had received a $200,000 loan within the past year and had used "the bulk of" this loan to pay for his housing and living expenses, along with legal filing costs. Dist. Ct. Dkt. No. 2 at 7. He also did not explain why he needed to use the entirety of his Robinhood and Coinbase accounts, which had together totaled more than $40,000 in June 2025, to cover five months of rent and pay for the "$13,257 in back rent" that he had claimed in June 2025. ROA at 286.

The magistrate judge recommended denying the renewed IFP motion. The magistrate judge reasoned that Mr. Smith "had sufficient funds to pay for both the necessities of life and his filing fee at the time he filed his complaint," and he had therefore not shown that he was entitled to proceed IFP. *Id.* at 312. For support, the magistrate judge cited to an unpublished decision of this court in which we held that "the district court did not abuse its discretion in refusing to grant [the plaintiff] leave

3

to proceed IFP on the ground" that she "had sufficient funds to pay the filing fee at the commencement of litigation" despite later becoming indigent. *Lewis v. Burger King*, 398 F. App'x 323, 326 (10th Cir. 2010) (unpublished).

Mr. Smith filed an objection, but the district court ultimately adopted the magistrate judge's report and recommendation. In addressing Mr. Smith's argument that his funds were now depleted, the district court reasoned that "nothing changes the fact that [Mr. Smith] knew on June 5, 2025, that [the magistrate judge's] recommendation was for him to pay the $405.00 filing fee in full and for the [district c]ourt to deny [his] motion to proceed IFP." ROA at 324. Mr. Smith's subsequent decision to transfer all of his money to his landlord did not change the fact that he had adequate funds at the time of filing to pay the filing fee in full. The district court therefore denied Mr. Smith's renewed IFP request and advised him that the action would be dismissed without prejudice unless he paid the $405 filing fee in full within twenty-one days of the court's order.

Mr. Smith appeals the district court's denial of his initial and renewed applications to proceed IFP. We have appellate jurisdiction over this appeal under the *Cohen* doctrine. *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1310 (10th Cir. 2005); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

Under § 1915(a), a court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security

4

therefor." 28 U.S.C. § 1915(a). "Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners." *Lister*, 408 F.3d at 1312.

"[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Id.* And "the court must 'dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue' or that 'the action . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted;' or makes a claim for monetary relief from an immune party." *Id.* (quoting § 1915(e)(2)(B)) (alterations in original).

We review the district court's denial of IFP for an abuse of discretion. *See Lister*, 408 F.3d at 1312.

Mr. Smith argues that the district court abused its discretion by finding that he had sufficient funds to pay the $405 filing fee. He contends that the district court should have granted IFP because (1) the IFP application and accompanying affidavit "showed no income, no banking access, more than $18,000 in overdue rent, and negative cash flow"; and (2) the assets relied on by the court to deny IFP were "temporary borrowed funds that existed briefly in a cryptocurrency app," which "were borrowed for necessities of life and were immediately used for rent, utilities, and survival expenses." Appellant's Br. at 2 (emphasis omitted).

As an initial matter, we note that Mr. Smith has not explained why it should matter that his assets were held in cryptocurrency accounts rather than in a traditional

5

bank account. Section 1915 requires an assessment of "all assets," with no limitations on the types of assets to be considered. And Mr. Smith provides no persuasive reason why cryptocurrency assets should be treated any differently under this statute than assets held in traditional bank accounts.

Likewise, because § 1915 requires an assessment of "assets," not just income, Mr. Smith's assertions that he has either no income or only inconsistent income are not determinative of whether the district court should have allowed him to proceed IFP. *See Lister*, 408 F.3d 1309, 1313 (holding that a petitioner had not demonstrated an entitlement to IFP by simply asserting that she was unemployed and "never received money"); *see also Grimes v. TCF Bank*, 769 F. App'x 659, 660 (10th Cir. 2019) (unpublished)[1] (holding that the district court did not abuse its discretion by denying IFP to a litigant who had $4,500 in a savings account, even though the majority of his income came from student loans and his cash flow absent these loans was negative); *Lay v. Okla. Dep't of Corr.*, 746 F. App'x 777, 779 (10th Cir. 2018) (unpublished) (holding that the district court did not abuse its discretion by denying IFP to a prisoner when the balance in the prisoner's inmate savings account at the time of filing was enough to cover the district court filing fee, with no mention of any income the prisoner might have had in prison).

---

[1] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

As for Mr. Smith's assertion that the district court "failed to consider" that he owed "more than $18,000 in overdue rent," Appellant's Br. at 2–3 (emphasis omitted), we note that the IFP application and affidavit did not in fact say anything about overdue rent. And when Mr. Smith did raise the matter of overdue rent in his objection to the magistrate judge's first report and recommendation, he claimed that the amount of overdue rent was $13,257, not $18,000 as he now claims. Moreover, even if Mr. Smith had alerted the district court to his current allegation that he owed $18,000 in overdue rent when he filed his IFP application, this would not change the fact that he had $42,000 in claimed assets at that time. Taking as true his current assertion that he owed $18,000 in overdue rent, he could have paid both the $18,000 for rent and the $405 filing fee and still been left with more than $23,000 to cover his ongoing expenses.

At the heart of Mr. Smith's argument is his contention that borrowed money should not be counted as an asset for purposes of determining indigency under § 1915. But Mr. Smith cites no authority, and we have found none, for the proposition that a district court must disregard substantial assets in a petitioner's accounts if the petitioner alleges that these assets are the proceeds of a loan. To the contrary, the decisions we have found on this point have generally concluded that borrowed funds constitute assets that must be considered as part of the IFP assessment. *See, e.g.*, *Mitchell v. Brook*, No. 21-cv-05014-DMR, 2023 WL 4566288, at *4 (N.D. Cal. July 17, 2023) (holding that a litigant's "allegation of poverty was untrue" based on his recent receipt of "PPP loan proceeds," which were "material to

7

the court's determination of his qualification for IFP status"); *McGee v. United States*, No. 1:08–cv–154, 2010 WL 520708, at *3 (W.D. Mich. Feb. 8, 2010) (finding "no statute or other authority which empowers a federal judge to refuse to apply an unambiguous federal statute because the judge personally believes it is unfair or illogical to count borrowed funds that are deposited into a party's prison trust account" as part of the IFP assessment). *Cf. In re Marshall*, 550 F.3d 1251, 1258 (10th Cir. 2008) (holding in the bankruptcy context that loan proceeds are considered an asset of the bankruptcy estate).

Of course, there may be circumstances in which a litigant in possession of borrowed funds may be considered indigent. *See, e.g.*, *Moreno v. Salvation Army*, No. 23-cv-01254, 2024 WL 6934557, at *1 (N.D. Ill. Mar. 19, 2024) (holding that a litigant could proceed IFP where his only assets "came from a loan by a friend to be used for the specific purpose of paying for his minor children's educational expenses"). Under the circumstances of this case, however, we are not persuaded that the district court abused its discretion by finding that Mr. Smith could use his assets to pay the $405 filing fee.

As an initial matter, we note that the IFP application and affidavit indicate that Mr. Smith's Robinhood account contained borrowed funds from an unidentified source while his Coinbase account contained proceeds from a recent $200,000 personal loan. However, nothing in the IFP application or affidavit indicates that the $1,100 in Mr. Smith's Cash App account was borrowed. And this $1,100 amount would have been sufficient in itself to cover the $405 filing fee, without needing to

tap into any borrowed funds. Thus, even if we were to accept Mr. Smith's argument that he should not have been expected to pay his filing fee with borrowed funds, which we do not, he has not shown that he would have been required to use borrowed funds to pay the filing fee here.

Moreover, although Mr. Smith asserts on appeal that the funds in his accounts "were borrowed for necessities of life and were immediately used for rent, utilities, and survival expenses," Appellant's Br. at 2 (emphasis omitted), the affidavit accompanying his IFP application indicated that he was using the November 2024 loan not just for housing and living expenses, but also "legal filing costs." Dist. Ct. Dkt. No. 2 at 7. In light of Mr. Smith's admission that he was using the borrowed funds in part for litigation purposes, we are not persuaded that the district court abused its discretion by concluding that these borrowed funds were also available to cover the $405 filing fee here.

Additionally, while Mr. Smith asserts on appeal that he needed to dedicate all of his funds to pay for his overdue rent and ongoing living expenses, the IFP application and affidavit suggest some cause for skepticism. As discussed above, Mr. Smith has asserted various amounts of overdue rent in various court filings in this case, but he has never explained why he owed any back rent in June 2025 after finalizing a bankruptcy in 2024 and then using "the bulk of" a $200,000 loan issued in November 2024 to cover his housing costs, living expenses and court fees. *Id.* at 7. Considering that Mr. Smith's claimed monthly rent is $1,800, he could have paid the alleged $18,000 in overdue rent and then covered more than eight additional years of

rent payments with the November 2024 loan. Indeed, even taking into account all of his other claimed monthly expenses, the $200,000 loan should have lasted for at least six years according to his own financial information. But instead, he claims that the $200,000 loan was fully depleted within less than one year without explaining why.

Mr. Smith has never explained the significant discrepancy between his alleged expenses and his claimed actual expenditure of funds. And assuming this discrepancy can be explained by Mr. Smith's claimed use of the $200,000 loan in part to pay court fees, he has not explained why this loan was available to pay what would, by his own information, seem to amount to more than $100,000 in litigation fees in other cases, while it remained unavailable for him to pay the $405 filing fee in this case.

Perhaps Mr. Smith has some explanation for the apparent inconsistencies and discrepancies in the information he provided to the district court. But he did not present any such explanation to the district court, and we cannot say that the district court abused its discretion by concluding, under all of the circumstances of this case, that Mr. Smith could use a small portion of his $42,000 in assets to pay the $405 filing fee.

Mr. Smith's assertion that he subsequently used all of these assets to cover $18,000 in overdue rent does not change this conclusion. Because Mr. Smith had more than enough funds to cover both the $405 filing fee and the necessities of life when he applied for IFP status, the district court acted within its discretion by holding that he was not entitled to proceed IFP despite his alleged depletion of those

funds after filing. *See Lewis*, 398 F. App'x at 326. We therefore affirm the district court's decisions denying IFP.

Mr. Smith has also filed a motion to proceed IFP on appeal. To succeed on this motion, he must show "a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (quotation marks and brackets omitted). We are not persuaded that Mr. Smith has shown "the existence of a reasoned, nonfrivolous argument on the law and facts" here. *Id.* (quotation marks omitted). We therefore deny his motion to proceed IFP on appeal as well.

We accordingly AFFIRM the district court's denials of Mr. Smith's initial and renewed IFP applications. Mr. Smith's motion to proceed IFP on appeal is DENIED.

Entered for the Court

Carolyn B. McHugh
Circuit Judge