ELECTRONIC CITATION:  2008 FED App. 0003P (6th Cir.)
File Name:  08b0003p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:   SHARRENE WELLS, | ) | |
| | ) | |
| Debtor(s). | ) | |
| _____ | ) | |
| | ) | |
| MARCIA R. MEOLI, TRUSTEE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | No. 07-8021 |
| | ) | |
| v. | ) | |
| | ) | |
| MBNA AMERICA BANK, N.A., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan.
Bankruptcy Case No. 05-18783; Adversary Proceeding No. 06-80634.

Argued:  November 13, 2007

Decided and Filed:  February 11, 2008

Before: AUG, SCOTT, and WHIPPLE, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:**  Lawrence G. Reinhold, WEINSTEIN & RILEY, P.S., Huntington Woods, Michigan, for Appellant.  Marcia R. Meoli, HANN, PERSINGER, P.C., Holland Michigan, for Appellee.  **ON BRIEF:**  Lawrence G. Reinhold, WEINSTEIN & RILEY, P.S., Huntington Woods, Michigan, for Appellant.  Marcia R. Meoli, HANN, PERSINGER, P.C., Holland Michigan, for Appellee.

---

**OPINION**

---

MARY ANN WHIPPLE, Bankruptcy Appellate Panel Judge. MBNA America Bank, N.A., ("MBNA") appeals the bankruptcy court's order granting the Chapter 7 Trustee ("the Trustee") summary judgment on her preference claim under 11 U.S.C. § 547(b). The bankruptcy court held that use by the debtor ("Debtor") in the underlying Chapter 7 case of credit on a credit card account to reduce the balance owed on a second credit card account with MBNA was a transfer of an interest of the debtor in property that constitutes a preferential transfer. The bankruptcy court rejected MBNA's argument that there had been no transfer of an interest of Debtor in property due to one or more of the following circumstances: the balance transfer was accomplished directly from one credit card company to another, the earmarking doctrine applied, or there was no diminution of the estate. For the reasons that follow, the bankruptcy court's decision is AFFIRMED.

## I. ISSUE ON APPEAL

The issue on appeal is whether Debtor's use of convenience checks drawn on one credit card account to reduce the balance on another credit card account was a transfer of an interest of the Debtor in property as contemplated under 11 U.S.C. § 547(b).

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the BAP. The bankruptcy court's order granting the trustee's motion for summary judgment is a final order and may be appealed as of right. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007); 28 U.S.C. § 158(a)(1). None of the parties have timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(c)(1).

A bankruptcy court's grant of summary judgment is reviewed de novo. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P.

6th Cir. 2001). Summary Judgment is appropriate when "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(c).

## III. FACTS

The following facts are undisputed. Debtor made the following payments in order to reduce the balance owed by her on her credit card account with MBNA: $410 on July 21, 2005; $406 on August 19, 2005; $5,000 on August 19, 2005; and $5,000 on September 3, 2005. The last two $5,000 payments are the only payments at issue in this appeal. Both of those payments were made at the direction of Debtor through the use of convenience checks drawn on her credit card account with Chase Bank USA, N.A. ("Chase Bank").[1]

On October 14, 2005, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. On August 25, 2006, the Trustee commenced an adversary proceeding against MBNA to recover the above stated payments as preferential transfers under § 547(b). The Trustee filed a motion for summary judgment, arguing that all elements of a preferential transfer are satisfied. On April 13, 2007, the bankruptcy court issued a bench opinion granting the Trustee's motion for summary judgment. The bankruptcy court rejected MBNA's arguments, finding no genuine dispute that Debtor "had sufficient dominion and control of monies made available to her through the Chase revolving credit account to cause any draw made by debtor against that account to constitute property of the debtor for purposes of Section 547(b)." (App. at 99.) The court also rejected MBNA's diminution of the estate argument, finding that Debtor's decision to draw upon the unrestricted Chase revolving credit line created an "augmentation of debtor's assets which in turn was thereafter diminished by debtor's decision to use the drawn funds to pay off the debt to MBNA." (*Id*. at 100.) On April 18, 2007, the bankruptcy court entered an order granting the Trustee's motion for summary

---

[1] The bankruptcy court noted in its bench opinion that the Trustee suggested at an earlier hearing that the August 19, 2005, convenience check in the amount of $5,000 was first deposited in Debtor's checking account and payment in that same amount was then made by Debtor to MBNA from that checking account. The court stated, however, that "for purposes of this opinion I will treat the August 2005 payment to MBNA as also being made by a check drawn on the Chase Bank credit line since it makes no difference to the outcome of my decision today." (App. at 95).

judgment and on April 19, 2007, entered judgment against MBNA in the amount of $10,816. MBNA filed a timely appeal.

## IV. DISCUSSION

The Trustee seeks to avoid prepetition transfers to MBNA as preferences under 11 U.S.C. § 547(b),[2] which provides as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made–
>
>> (A) on or within 90 days before the date of the filing of the petition;
>>
>> . . . .
>
> (5) that enables such creditor to receive more than such creditor would receive if–
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

MBNA does not contend that any exception under § 547(c) applies and does not dispute that elements set forth in § 547(b)(1) through (5) are satisfied. As discussed below, its arguments address only the threshold requirement that the payments at issue constitute a "transfer of an interest of the debtor in property." 11 U.S.C. 547(b). Specifically, MBNA argues (1) that Debtor has no property interest in funds that are the subject of a bank to bank transfer, (2) that the earmarking doctrine

---

[2] Section 547 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), effective October 17, 2005. Because Debtor's bankruptcy case was filed before the effective date of the Act, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version of the Code. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sec. 1501(b)(1), Pub. L. No. 109-8, 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under Title 11 before the effective date of the Act).

applies such that the transferred funds do not constitute property of Debtor, and (3) that because there was no diminution of the estate, there can be no preferential transfer. The decision of the Sixth Circuit Court of Appeals in *McLemore v. Third Nat'l Bank (In re Montgomery),* 983 F.2d 1389 (6th Cir. 1993), directs the Panel's decision in this case.

In *McLemore,* the defendant bank loaned the debtors two million dollars, which debtors paid off during the preference period with funds generated in part through the kiting of checks at other banks. The Sixth Circuit viewed the deposit of kited checks and the subsequent ability to draw on those deposits before the checks were actually paid as the extension of provisional credit from which the debtors obtained a loan when they wrote checks drawing on that credit. The defendant bank argued that the shift in the kite simply moved unauthorized loans from one institution to another without depleting assets that would otherwise have been distributable to the debtors' general creditors. While the Sixth Circuit agreed that "a voidable preference necessarily depletes the debtor's estate," relying on the analysis in *In re Smith*, 966 F.2d 1527 (7th Cir. 1992), it found that a preferential transfer had occurred.

In *Smith*, the debtor deposited a bad check against which he wrote a check in payment of an antecedent debt. The second check was honored before the first check, for which provisional credit had been extended, was returned for insufficient funds. In finding that a preferential transfer had occurred, the court explained:

> The real question here is whether the Debtor was actually able to exercise sufficient dominion and control over the funds to demonstrate an interest in property. Although the Bank was not statutorily required to extend provisional credit, it nevertheless did so . . . . By itself, such provisional credit might not evidence an interest of the Debtor in property; but the Debtor exercised dominion and control over the funds by making actual payment to a creditor. The Debtor surely had something of value during the period when the Bank was extending the provisional credit. Instead of writing [one] check . . . the Debtor could have written several checks, paying off each of its creditors on a pro rata basis. Alternatively, the Debtor could have purchased a 40-foot yacht. The point is that the Debtor exercised significant control (over a significant amount of money) in choosing to pay off a single creditor.

*Smith,* 966 F.2d at 1531.

Applying the *Smith* rationale, the Sixth Circuit found in *McLemore* that the debtor had a similar measure of control over the funds represented by the kited checks. *McLemore*, 983 F.2d at 1395. The court explained that because the debtor could have used the credit extended through the kited checks to purchase assets instead of paying his debt, the assets in the estate at the time of bankruptcy were less than they could have been. *Id.* The Sixth Circuit concluded that "'[w]hen a debtor effectively borrows *nonearmarked* funds and exercises control by using the funds to pay a preferred creditor over others, the estate has been diminished.'" *Id.* (quoting *Smith*, 966 F.2d at 1537 and adding emphasis). The court found no earmarking since the debtor rather than the lender determined the disposition of the borrowed funds. *Id.*; *see Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067, 1071-72 (6th Cir. 1987) ("The earmark rule requires that the party making the loan choose the recipient of the funds.").

This case presents facts that are, for all practical purposes, indistinguishable from those in *McLemore* and *Smith*. Chase Bank extended credit to Debtor, which Debtor accepted and converted into a loan through the use of the convenience checks directing payment of a debt owed to MBNA. As in *McLemore* and *Smith*, Debtor borrowed funds that she could have used to purchase assets instead of paying the MBNA debt. Chase Bank did not direct or require the loaned funds to be paid to MBNA. As a general rule, a debtor's "use of borrowed funds to discharge [a] debt constitutes a transfer of property of the debtor." *McLemore,* 983 F.2d at 1395. Nothing about the transactions at issue in this case removes them from this general rule.

Nevertheless, MBNA argues that the earmarking doctrine, originally developed to protect payments by guarantors of obligations of the debtor, *see McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enter., Ltd.)*, 859 F.2d 561, 566 (8th Cir. 1988), requires a determination that what it characterizes as the "bank to bank" transfer at issue in this case did not involve property of the Debtor. Under the earmarking doctrine, "where the borrowed funds have been specifically earmarked *by the lender* for payment to a designated creditor," courts have found that no transfer of property of the debtor occurred "even if the funds pass through the debtor's hands in getting to the selected creditor," *Montgomery,* 983 F.2d at 1395 (emphasis added); *McCuskey*, 859 F.2d at 566. However, this equitable doctrine does not apply in this case. There is no dispute that Chase Bank imposed no stipulation on the disbursement of the proceeds of the convenience check loans. As in

*McLemore* and *Smith*, Debtor, not Chase Bank, exercised control over how and to whom those funds would be disbursed. Thus, at the time Debtor converted the offer of credit into a loan, she had a sufficient interest in, and control over the use of, the borrowed funds such that the funds constitute an "interest of the debtor in property" as contemplated by § 547(b).

MBNA also argues that the transaction at issue resulted only in a substitution of creditors that did not result in any depletion of Debtor's estate and that without such a depletion, there cannot be a voidable preference. This same argument was rejected by the court in *McLemore*. *See McLemore*, 983 F.2d at 1395-96. The court found that "the debtors' estate was depleted . . . when the debtors elected to use the proceeds of unauthorized loans obtained from other banks to discharge their indebtedness to [the defendant bank]." *Id.* at 1396. Similarly, in this case, as discussed above, Debtor converted an offer of credit into a loan through the use of convenience checks and her estate was then depleted when she directed that the loan proceeds be used to pay MBNA.

MBNA's attempt to distinguish *McLemore* is unavailing. MBNA contends that *McLemore* did not involve a "transfer of debt" between banks but, rather, the debtor had dispositive control over the funds because they were deposited in her checking account. However, in *McLemore*, the funds transferred were the result of the bank's policy of extending provisional credit before a check was cleared. *Id.* at 1394; *see Smith*, 966 F.2d at 1531. Thus, the funds had not yet been deposited in the debtor's account. The "economic reality" of the transaction was that the debtor obtained a loan from the bank, at which time he acquired control of the loan proceeds. *See Smith*, 966 F.2d at 1532. And that is exactly what occurred in this case. MBNA incorrectly characterizes the transfer as a "transfer of debt." What occurred was the transfer of actual funds by Chase in payment of Debtor's obligation owed to MBNA. It makes no difference that Debtor never had the cash in hand since she had sufficient control over the disposition of the funds. *See McLemore*, 983 F.2d at 1394.

Moreover, the diminution of a debtor's estate is not an element of a preference claim under § 547(b). Whether a transfer depletes a debtor's estate is considered in the context of determining whether the threshold requirement has been met that the transfer was of an interest of the debtor in property. *Mandross*, 825 F.2d at 1070 (explaining that "in the context of transfers by third parties, the diminution of estate doctrine asks whether the debtor controlled the property to the extent that

he owned it and thus the transfer diminished his estate"). As discussed above, Debtor did exercise such control over the loan proceeds at issue so that, on acceptance of the loan, she had an equitable interest in the proceeds.

MBNA also argues that the transfer at issue should not be avoided since avoidance will not promote the purposes of the avoidance power under § 547(b). The Panel disagrees. The avoidance power promotes the central policy of the Bankruptcy Code – equality of distribution among creditors. *Begier v. Internal Revenue Serv.,* 496 U.S. 53, 58, 110 S. Ct. 2258, 2262-63 (1990). Thus, the avoidance power is implicated only if there is a transfer of "property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceeding." *Id.* (finding that transfers of property held in trust in which the debtor had no equitable interest were not avoidable preferences as such property would not become property of the bankruptcy estate). Avoidance of the transfer in this case furthers the policy of equality of distribution. Debtor chose to pay $10,000 to MBNA with the loan proceeds obtained from Chase Bank while other creditors received nothing. Had Debtor retained the loan proceeds rather than satisfying an obligation to MBNA, the proceeds would have been part of the bankruptcy estate. *See Smith*, 966 F.2d at 1535.

Avoidance of the transfer in this case also reduces the incentive to rush to dismember a financially unstable debtor – a second policy underlying § 547(b). *Id.* Although such a circumstance may not have actually occurred in this case, recapture removes the incentive for "hungry creditors" to "exert pressure on desperate debtors" to engage in similar transactions involving "competitive last-minute asset-grabbing." *Id.*

Finally, the Panel notes that two courts have reached a different conclusion from that set forth in this opinion on facts similar to those presented in this case, both of which are cases from bankruptcy courts outside the Sixth Circuit that are, therefore, not required to view *McLemore* as binding precedent. *See Parks v. MBNA Corp. (In re Marshall)*, Case No. 05-18216, Adv. No. 06-5181, 2007 WL 2137772 (Bankr. D. Kan. July 23, 2007);[3] *Loveridge v. Ark of Little Cottonwood, Inc. (In re Perry)*, 343 B.R. 685 (Bankr. D. Utah 2005). In *Parks*, the debtors had several credit card

---

[3] This decision is on appeal.

accounts. At the debtors' direction, one credit card company paid a total of $38,000 on debtors' two MBNA accounts during the preference period. The payments were made directly to MBNA; no funds were disbursed to the debtors. The court found that there was not a transfer of an interest of the debtors in property. The court reasoned that the "credit is not an interest available for satisfaction of creditors' claims in bankruptcy." *Parks*, 2007 WL 2137772 at *2. The court explained that "the theoretical possibility that a debtor can draw upon a line of credit for any purpose is not sufficient to find the debtor has a property interest in credit proceeds." *Id.* at *5. Thus, the court concluded:

> [T]he funds paid to defendant MBNA were assets of Capitol One in which the Debtors did not have an interest for purposes of § 547. Debtors merely exercised an offer to transfer credit card balances; this offer, if not exercised as of the date of filing, would have added no value to the estate. The transfer was a mere substitution of creditors which had no impact on either the property of the estate or the value of the claims asserted against the estate.

*Id.*

In *Loveridge*, the debtor directed his credit card company, MBNA, to make a $7,000 payment to a creditor. MBNA transferred the funds directly to the creditor. The court reasoned that "[a]t most, a debtor's credit constitutes merely potential wealth. Creditors of an estate cannot force a debtor to use credit to create liquidity available for distribution." *Loveridge*, 343 B.R. at 688. Although the court acknowledged that "creditors benefit from a debtor's credit where the debtor elects to purchase property or borrow funds from a credit card account," the court concluded that "[s]ince the payment was a transfer of mere credit, and did not affect the amount of liquidity or property available for distribution by the estate's creditors, the payment was not a transfer of an interest of the debtor in property."

Contrary to the Sixth Circuit's direction in *McLemore,* both *Parks* and *Loveridge* characterize the transactions as transfers of credit and ignore the "economic substance" of the transactions that were the subject of the preference actions, that is, that the debtors obtained a loan from their credit card company and directed the proceeds to be paid to another creditor. *See McLemore*, 983 F.2d at 1394 (explaining that the "economic substance" was the same as if the bank had handed the debtor currency which he promptly applied against his debt); *Smith*, 966 F.2d at 1532 (the "economic substance" of the transaction was that the debtor obtained a loan from the bank and used the loan

proceeds to pay his debt to another creditor). They ignore the fact that the debtors could have retained the proceeds, which then would have been available to all of their unsecured creditors in bankruptcy for pro rata distribution. While it is true that a debtor's potential credit (i.e., an offer of credit) is not an equitable interest that becomes property of the estate, if the debtor accepts the offer prepetition or exercises a contract right to borrow funds from a credit card account, the debtor then has at least an equitable interest in the funds. This is true even if the debtor never receives the funds but only exercises control over the disposition of the funds.

## V.   CONCLUSION

For all of the foregoing reasons, the bankruptcy court's order granting the Chapter 7 Trustee summary judgment on her preference claim under 11 U.S.C. § 547(b) is AFFIRMED.