*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

File Name: 08b0003n.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re: JEANNETTE L. DILWORTH,

                    Debtor.

_____

LOUIS J. YOPPOLO, Trustee,

      Plaintiff - Appellee,

v.

MBNA AMERICA BANK, N.A.,

      Defendant - Appellant.

No. 07-8020

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Western Division
Case No. 05-75071; Adv. Pro. No. 06-3342

Argued and Submitted: November 13, 2007

Decided and Filed: March 12, 2008

Before: FULTON, GREGG, and PARSONS, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Lawrence G. Reinhold, WEINSTEIN & RILEY, P.S., Huntington Woods, Michigan, for Appellant. **ON BRIEF:** Lawrence G. Reinhold, WEINSTEIN & RILEY, P.S., Huntington Woods, Michigan, for Appellant. Louis J. Yoppolo, SHINDLER, NEFF, HOLMES, SCHLAGETER & MOHLER, LLP, Toledo, Ohio, for Appellee.

---

**OPINION**

---

MARCIA PHILLIPS PARSONS, Chief Bankruptcy Appellate Panel Judge. The bankruptcy court granted summary judgment in favor of the plaintiff chapter 7 trustee, concluding that the trustee was entitled to avoid a balance transfer from one credit card company to another as preferential under 11 U.S.C. § 547. The defendant creditor contends on appeal that the bank-to-bank transfer was not a transfer of property of the debtor, a necessary element of a preference, because the transfer resulted only in the substitution of one creditor for another, there has been no diminution of the debtor's assets, and the funds were earmarked for payment. We reject all of these arguments and affirm the bankruptcy court's order, adopting the recent decision of the Panel in *Meoli v. MBNA America Bank, N.A. (In re Wells)*, __ B.R. __, 2008 WL 351281 (B.A.P. 6th Cir., February 11, 2008).

## I. ISSUE ON APPEAL

The issue on appeal is whether the bankruptcy court erred in granting the chapter 7 trustee's motion for summary judgment on the ground that the debtor's balance transfer from one credit card company to another did not constitute a transfer of property of the debtor.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. 28 U.S.C. §§ 158(b)(6), (c)(1). A "final order" of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order, for the purpose of an appeal, is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989). The bankruptcy court's order granting the trustee's motion for summary judgment is a final order.

2

Determinations of whether payments are preferential transfers under 11 U.S.C. § 547(b) on summary judgment are conclusions of law reviewed *de novo*. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001); *see also In re Mktg. & Creative Solutions, Inc.*, 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) ("De novo review means that the issue is decided as if it had not been heard before.") (citing *In re Downs*, 103 F.3d 472 (6th Cir. 1996)). "No deference is given to the trial court's conclusions of law." *In re Eastown Auto Co.*, 215 B.R. 960, 964 (B.A.P. 6th Cir. 1998).

### III. FACTS

The facts in this case are undisputed. On August 22, 2005, Jeannette L. Dilworth ("Debtor") paid a debt of $10,500 owed by her to MBNA America Bank, N.A. ("MBNA") by using a balance transfer check drawn on her CitiPlatinum ("CitiBank") Select Card. As such, the funds used to pay MBNA were never in the Debtor's possession and went directly from CitiBank to MBNA. Less than 90 days later, on October 14, 2005, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Thereafter, on June 23, 2006, Louis J. Yoppolo, the chapter 7 trustee ("Trustee"), filed a complaint to avoid the transfer as preferential under § 547 of the Bankruptcy Code.

On November 9, 2006, the Trustee filed a motion for summary judgment, asserting that there was no dispute of material fact and that he was entitled to judgment as a matter of law. MBNA opposed the motion, arguing that under the earmarking doctrine, no transfer of property of the Debtor had occurred because the check used to pay MBNA had been drawn on CitiBank's account, rather than the Debtor's personal bank account. In a similar vein, MBNA argued that no preference had occurred because one creditor had merely been substituted for another in the transaction, resulting in no diminution of the assets of the Debtor.

In a decision and order filed April 12, 2007, the bankruptcy court rejected MBNA's arguments and granted summary judgment in favor of the Trustee. According to the bankruptcy court, the

3

determinative factor of whether there had been a transfer of the Debtor's property is the Debtor's degree of control over the distribution of funds. Because the Debtor "demonstrated significant, if not total control" when she, rather than the lender, decided which creditor to pay, the court concluded that the funds used to pay MBNA were property of the Debtor, even though they never actually came into her possession. As stated by the court:

> The key here is that the Debtor could have chosen to direct the funds to other creditors. In fact, [MBNA's] Response [to the Trustee's summary judgment motion] inadvertently acknowledges the Debtor's control over the funds by stating that "[s]ince a balance transfer check . . . was used it seems quite clear that the Debtor may have chosen which existing creditor to designate for the balance transfer." Such an ability to direct the funds necessarily constitutes a sufficient degree of control, such that the funds became a part of her estate.

(Appellant's App. at 50.) MBNA timely appealed the bankruptcy court's order.

## IV. DISCUSSION

Under § 547(b) of the Bankruptcy Code, a trustee may avoid as impermissibly preferential certain transfers of interests of the debtor in property that occur within 90 days prior to the filing of a bankruptcy petition. Section 547 (b) states in relevant part:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1)     to or for the benefit of a creditor;
> (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3)     made while the debtor was insolvent;
> (4)     made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5)     that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

4

All five elements of § 547(b) are prerequisites to the finding of a voidable preference. *Ray v. Sec. Mut. Fin. Corp. (In re Arnett)*, 731 F.2d 358, 360 (6th Cir. 1984). The Trustee has the burden of proof. 11 U.S.C. § 547(g). There is no dispute that the Trustee has met his burden of proving elements (1) through (5) of § 547(b). The sole issue in this appeal is whether there was a "transfer of an interest of the debtor in property," as required by the introductory language of § 547(b). *See McLemore v. Third Nat'l Bank (In re Montgomery)*, 983 F.2d 1389, 1392 (6th Cir. 1993) ("There cannot be a voidable preference . . . without a transfer of an interest in 'property.'").

The *Wells* decision involved facts virtually identical[1] to those in the present case and was an action against the same defendant, MBNA, which raised the same arguments as it raises herein. In a thorough, well-written opinion, the Panel rejected all of MBNA's arguments, concluding that the outcome was directed by the Sixth Circuit Court of Appeals' decision in *Montgomery*. *In re Wells*, 2008 WL 351281, *2. We agree and adopt *Wells* and its holding in its entirety, finding it applicable in all respects to the present case.

Briefly stated, as explained in *Wells,* the court of appeals concluded in *Montgomery* that "when a debtor effectively borrows nonearmarked funds and exercises control by using the funds to pay a preferred creditor over others, the estate has been diminished." *Id.* at *3 (quoting *In re Montgomery*, 983 F.2d at 1395). The court of appeals found no earmarking in *Montgomery* because "the debtor rather than the lender determined the disposition of the borrowed funds." *Id.* (citing *Mandross v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067, 1071-72 (6th Cir. 1987) ("The earmark rule requires that the party making the loan choose the recipient of the funds.")). Finding the case before it indistinguishable, for all practical purposes, from *Montgomery,* the *Wells* Panel concluded that the earmarking doctrine was inapplicable because the lender had imposed no

---

[1] In *Wells*, the debtor used convenience checks drawn on her credit card account with Chase Bank USA, N.A. to pay on her credit card account with MBNA. In the case at hand, the Debtor used a check drawn on her credit card account with CitiBank to pay the balance owed on her account with MBNA. Accordingly, *Wells* involved the same facts that MBNA asserts are dispositive here: a bank-to-bank transfer, with the funds never coming into the debtor's actual possession, and the substitution of one creditor, at least in part, for another, with no diminution of the estate.

5

stipulation on the disbursement of the checks, and the debtor, rather than the lender, had exercised control over how and to whom the checks would be disbursed. *Id.* at *4.

Similarly, the case at hand is indistinguishable from *Wells* and *Montgomery*. As represented to the bankruptcy court and as admitted by counsel for MBNA at oral argument in this case, CitiBank imposed no stipulation on the disbursement of the loan proceeds, the Debtor unilaterally made the decision to pay MBNA, and the Debtor could have used the money for any purpose whatsoever. In the words of the *Wells* Panel, substituting the names of the parties herein for the parties in *Wells*:

> [CitiBank] extended credit to Debtor, which Debtor accepted and converted into a loan . . . . As in [*Montgomery*], Debtor borrowed funds that she could have used to purchase assets instead of paying the MBNA debt. [CitiBank] did not direct or require the loaned funds to be paid to MBNA. As a general rule, a debtor's "use of borrowed funds to discharge a debt constitutes a transfer of property of the debtor." [*In re Montgomery*], 983 F.2d at 1395. Nothing about the transactions at issue in this case removes them from this general rule.

*Id.*[2]

*Wells* also fully addressed and disposed of MBNA's argument that the transaction resulted only in a substitution of creditors that did not result in any depletion of the Debtor's estate. *Wells* noted that this same argument was rejected in *Montgomery*, with the court of appeals explaining that "'the debtors' estate was depleted . . . when the debtors elected to use the proceeds of unauthorized loans obtained from other banks to discharge their indebtedness to the defendant bank.'" *Id.* (quoting *In re Montgomery*, 983 F. 2d at 1396). "Similarly, in this case . . . Debtor converted an offer of credit into a loan through the use of convenience checks and her estate was then depleted when she directed that the loan proceeds be used to pay MBNA." *Id.*

As it did in *Wells*, MBNA seeks to distinguish *Montgomery*, stating that it did not involve a "transfer of debt" between banks since the debtors therein had dispositive control over the funds because they had been deposited into the debtors' checking account. Again, the *Wells* Panel succinctly rejected this assertion, finding no difference between the facts before it and *Montgomery*:

---

[2] Under specific facts, the recipient of an otherwise preferential transfer might establish the requisite elements of earmarking. In this appeal, as in *Wells*, the transferee failed to do so.

6

> [I]n [*Montgomery*], the funds transferred were the result of the bank's policy of extending provisional credit before a check was cleared. *Id.* at 1394; *see* [*In re Smith*, 966 F.2d 1527, 1531 (7th Cir. 1992)]. Thus, the funds had not yet been deposited in the debtor's account. The "economic reality" of the transaction was that the debtor obtained a loan from the bank, at which time he acquired control of the loan proceeds. *See Smith*, 966 F. 2d at 1532. And that is exactly what occurred in this case. MBNA incorrectly characterizes the transfer as a "transfer of debt." What occurred was the transfer of actual funds by Chase in payment of Debtor's obligation owed to MBNA. It makes no difference that Debtor never had the cash in hand since she had sufficient control over the disposition of the funds. *See* [*In re Montgomery*], 983 F.2d at 1394.

*Id.*

In its brief, MBNA makes certain policy arguments in support of reversal of the bankruptcy court's decision, asserting that a bank-to-bank transfer does not diminish the resources from which the Debtor's creditors could have been paid in this bankruptcy case, and that "the avoidance of a transfer of debt from one creditor to another is not a rush to dismember a financially unstable debtor." Again, both of these arguments were addressed and soundly disposed of in *Wells*. As to the first contention, the Panel observed that:

> Avoidance of the transfer in this case furthers the policy of equality of distribution. Debtor chose to pay $10,000 to MBNA with the loan proceeds obtained from Chase Bank while other creditors received nothing. Had Debtor retained the loan proceeds rather than satisfying an obligation to MBNA, the proceeds would have been part of the bankruptcy estate.

*Id.* at *5 (citing *In re Smith*, 966 F.2d at 1535) (also noting that instead of writing one check to one creditor, the debtor could have written several checks, paying off each of its creditors on a pro rata basis); *see also Growe v. AT&T Univ. Card Servs. (In re Adams)*, 240 B.R. 807, 812 (Bankr. D. Me. 1999) (The defendant "confuses 'property of the bankruptcy estate' with 'an interest of the debtor in property'. . . . The transfer negatively impacted equal distribution of assets among [the] creditors. [The debtor] 'drew upon funds that she could have used to pay all creditors equitably, and made those funds available to pay selected creditors.'"); *Reisz v. Napus Fed. Credit Union (In re Anderson)*, 275 B.R. 264, 266 (Bankr. W.D. Ky. 2002) ("The debtor's estate was depleted by the payment to Napus (the preferred creditor) instead of distribution of this money equally among the unsecured creditors."). The *Wells* Panel also concluded that avoidance of this type of transfer "reduces the incentive to rush to dismember a financially unstable debtor . . . [by] remov[ing] the incentive for 'hungry creditors'

7

to 'exert pressure on desperate debtors' to engage in similar transactions involving 'competitive last-minute asset-grabbing.'" *Id.* (quoting *In re Smith*, 966 F.2d at 1535).

We agree with *Wells* and also note that any policy arguments made to this Panel in this regard are misdirected. The preference provisions of the Bankruptcy Code contain no exceptions for bank-to-bank transfers or transactions that have no net effect overall on the debtor's financial condition or that only constitute a substitution of one creditor for another. And, we are not at liberty to rewrite the Code to add such exceptions, even if we found them desirable. *See Miller v. Cumis Ins. Soc'y (In re Lacefield)*, 167 B.R. 89, 90 (Bankr. E.D. Ky. 1994) ("Where . . . congressional intent is clear, our sole function is to enforce the statute according to its terms."). Moreover, we are appropriately constrained by the Sixth Circuit Court of Appeals' interpretation of the preference provisions in *Montgomery*, wherein the court expressly rejected the exceptions argued by MBNA.

In the final analysis, we are not persuaded by MBNA's argument that a bank-to-bank transfer should be treated differently than any other preferential transfer. CitiBank's extension of credit to the Debtor that permitted her to pay MBNA was a mere loan, no different than if CitiBank had given the Debtor the money and she had physically presented the money to MBNA in payment. *See In re Montgomery*, 983 F.2d at 1394 (the "economic substance" of the transaction whereby the bank provided credit to the debtor was the same as if the bank had handed the debtor currency that he promptly paid on his debt). Because the Debtor exercised the necessary dominion and control over the credit extended her by CitiBank by using the credit to preferentially pay MBNA, the transfer at issue was a "transfer of an interest of the debtor in property," within the scope of § 547(b).

## V. CONCLUSION

Based on the foregoing, the bankruptcy court's order granting the chapter 7 trustee's motion for summary judgment is AFFIRMED.