**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

In re: BRYAN K. MARSHALL and
JULIE M. MARSHALL,

    Debtors.

----------------------------------------

LINDA S. PARKS, Trustee,

    Plaintiff - Appellant,

v.

FIA CARD SERVICES, N.A.,
Successor in interest to MBNA
CORPORATION,

    Defendant - Appellee.

No. 08-3080

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 07-CV-01222-WEB)**

_____

Gaye B. Tibbets (with Jennifer Goheen-Lynch on the briefs) of Hite, Fanning &
Honeyman, L.L.P., Wichita, Kansas, for Plaintiff - Appellant.

Elizabeth A. Carson (with Petra H. Johnson on the briefs) of Bruce, Bruce &
Lehman, L.L.C., Wichita, Kansas, for Defendant - Appellee.

_____

Before **TACHA**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

_____

**O'BRIEN**, Circuit Judge.

During the ninety-day period prior to filing of their Chapter 7 bankruptcy petition, Bryan and Julie Marshall (Debtors) used their Capital One credit card accounts to make payments on their MBNA credit card accounts. Linda Parks, the bankruptcy Trustee, filed an adversary complaint against MBNA (now FIA Card Services) seeking to avoid the payments as preferential transfers under 11 U.S.C. § 547(b). The bankruptcy court concluded the payments were not preferential transfers; the district court agreed. We reverse.[1]

## I. BACKGROUND

The parties stipulated to the following facts. Debtors had two credit card accounts with MBNA: 6264 and 7781. They also had two credit card accounts with Capital One—a Platinum MasterCard account with a $30,000 line of credit and a Platinum Visa account with a $25,000 line of credit. On July 27, 2005, Debtors directed Capital One to pay MBNA $17,000 on the 6264 MBNA account through a balance transfer from their Capital One Platinum MasterCard account. On the same day, they directed Capital One to pay MBNA $21,000 on the 7781 MBNA account through a balance transfer from their Capital One Platinum Visa account.

On October 13, 2005, Debtors filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. Parks was appointed Trustee. Because Debtors'

---

[1] Our jurisdiction derives from 28 U.S.C. § 158(d).

payments to MBNA were made within ninety days of the filing of the bankruptcy petition (referred to as the preference period), Parks filed an adversary complaint against MBNA seeking to avoid these payments as preferential transfers under 11 U.S.C. § 547(b). Shortly thereafter, FIA Card Services (FIA), MBNA's successor-in-interest, was substituted as the defendant.

The bankruptcy court determined Debtors' payments to MBNA were not preferential transfers because they did not constitute transfers of an interest of Debtors in property as required by 11 U.S.C. § 547(b):

> [T]he funds paid to . . . MBNA were assets of Capit[a]l One in which the Debtors did not have an interest for purposes of § 547. Debtors merely exercised an offer to transfer credit card balances; this offer, if not exercised as of the date of filing, would have added no value to the estate. The transfer was a mere substitution of creditors which had no impact on either the property of the estate or the value of the claims asserted against the estate.

(R. App. at 80-81.) Parks appealed to the district court.

The district court affirmed the bankruptcy court's decision but analyzed the case under the earmarking doctrine which, in its broadest terms, exempts a debtor's use of borrowed funds from the Trustee's avoidance powers when those funds are lent for the purpose of paying a specific debt. In doing so, it looked to the amount of control Debtors exercised over the payments to MBNA and whether the transfer of those payments diminished the bankruptcy estate. It thought Debtors lacked the requisite control over the payments for them to constitute interests of Debtors in property:

-3-

It is undisputed that the debtors never possessed a check or proceeds of a loan. Capital One was under no obligation to cooperate with the debtors' request. The debtor[s] could not compel Capital One to make a payment. Nonetheless, Capital One chose to make a payment directly and specifically to MBNA on the debtors' behalf and essentially substituted itself as the debtors' creditor for the MBNA debt under the terms agreed [to] through the balance transfer agreement. The Court finds this to be a bank to bank transfer resulting in a substitution of the debtors' creditors.

(*Id.* at 156-57 (footnote omitted).) The district court also concluded that because there was never a transfer of assets, only credit, the bankruptcy estate was not diminished.

## II. DISCUSSION

Addressing preferences, § 547(b) of the Bankruptcy Code states in relevant part:

[T]he trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—(A) on or within 90 days before the date of the filing of the petition; . . . and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

-4-

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of the statute is two-fold: (1) "to secure an equal distribution of assets among creditors of like class" and (2) "to discourage actions by creditors that might prematurely compel the filing of a [bankruptcy] petition." *Gillman v. Scientific Research Prods., Inc., of Del. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 554 (10th Cir. 1995). The Trustee bears the burden of proving the avoidability of a transfer under § 547(b). *See* 11 U.S.C. § 547(g). If the Trustee succeeds, 11 U.S.C. § 550(a) allows her to recover the transferred property for the benefit of the estate.

Only the threshold requirement of 11 U.S.C. § 574(b) is at issue here, *i.e.*, whether the payments made to Debtors' MBNA credit card accounts from their Capital One credit card accounts constitute transfers of "an interest of the debtor in property." This is a legal issue we review de novo. *See Morris v. Hicks (In re Hicks)*, 491 F.3d 1136, 1139 (10th Cir. 2007).

The Bankruptcy Code does not define "an interest of the debtor in property." However, in *Begier v. IRS*, the Supreme Court said:

> Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors—"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition

analog to § 547(b)'s "property of the debtor."

496 U.S. 53, 58-59 (1990).[2]  Section 541(a)(1) provides that the property of the

estate includes "all legal or equitable interests of the debtor in property as of the

commencement of the [bankruptcy] case" wherever located and by whomever

held.  "[T]he scope of [§] 541 is broad and should be generously construed[;] . . .

an interest may be property of the estate even if it is novel or contingent." *Baer*

*v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000) (quotations

omitted).

"For purposes of most bankruptcy proceedings, property interests are

created and defined by state law.  Once that state law determination is made,

however, we must still look to federal bankruptcy law to resolve the extent to

which that interest is property of the estate." *Bailey v. Big Sky Motors, Ltd. (In re*

*Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002) (citations and quotations omitted).

We have uncovered no Kansas authority specifically addressing the issue

presented here but, in general, the right to use an item or to control its use is a

property interest.  *See J.A. Tobin Constr. Co. v. Holtzman*, 485 P.2d 1276, 1281

(Kan. 1971) ("The ownership of an item of property carries with it the right to

---

[2] In *Begier*, the Court analyzed the meaning of the phrase "property of the debtor" which was the language used in the pre-1984 version of 11 U.S.C. § 547(b).  496 U.S. at 59 n.3.  Nevertheless, because the amendment of that phrase to the current phrase ("interest of the debtor in property") was only a "clarifying change," the Court said both phrases were coextensive with property of the estate as defined in 11 U.S.C. § 541(a)(1). *Id.* (quotations omitted).

use, or to control the use of, that item of property. Therefore, where one has been wrongfully deprived of the use of an item of property there has been a loss of one of the valuable rights or interests in property—the right to use the property.").[3]

Courts have used this dominion/control test to determine whether a transfer of property was a transfer of "an interest of the debtor in property." *See, e.g., McLemore v. Third Nat'l Bank in Nashville (In re Montgomery)*, 983 F.2d 1389, 1395 (6th Cir. 1993); *In re Smith*, 966 F.2d 1527, 1531 (7th Cir. 1992). Under this test, a transfer of property will be a transfer of "an interest of the debtor in property" if the debtor exercised dominion or control over the transferred property. *See id.*

Other courts have applied a diminution of the estate test. *See, e.g., Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1116-17 (5th Cir. 1995); *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)*, 16 F.3d 313, 316 (9th Cir. 1994); *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000). Under this analysis, a debtor's transfer of property constitutes a transfer of "an interest of the debtor in property" if it deprives the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors. *See id.* "[I]f the debtor transfers property that would not have been available for distribution to his

---

[3] We are applying Kansas law because it is the forum state. Since the credit card agreement between Capital One and Debtors is not included in the record, we are unaware of any choice of law provision in the agreement.

creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated." *Begier*, 496 U.S. at 58.

As both the district court and bankruptcy court acknowledged, their conclusion that the credit card payments in this case were not transfers of "an interest of [Debtors] in property" represents the minority view. The majority of courts to address the issue have gone the other way. *See, e.g., Meoli v. MBNA Am. Bank, N.A. (In re Wells)*, 382 B.R. 355 (B.A.P. 6th Cir. 2008); *Parks v. Boeing Wichita Credit Union (In re Fox)*, 382 B.R. 800 (Bankr. D. Kan. 2008); *Mukamal v. Bank of Am. (In re Egidi)*, 386 B.R. 884 (Bankr. S.D. Fla. 2008); *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490 (Bankr. W.D. Mo. 1998); *Yoppolo v. Greenwood Trust (In re Spitler)*, 213 B.R. 995 (Bankr. N.D. Ohio 1997); *but see Loveridge v. Ark of Little Cottonwood, Inc. (In re Perry)*, 343 B.R. 685, 688 (Bankr. D. Utah 2005) (setting forth minority view). These courts reason that the debtor, even if never in actual possession of the loaned proceeds, exercises dominion or control over them as evidenced by an ability to direct their distribution. *See, e.g., In re Wells*, 382 B.R. at 361; *In re Egidi*, 386 B.R. at 894; *In re Getman*, 218 B.R. at 493-94; *In Re Spitler*, 213 B.R. at 998-99. They also conclude such transactions deplete the bankruptcy estate—when a debtor converts an offer of credit into loan proceeds and uses those proceeds to pay another creditor, the debtor deprives the bankruptcy estate of those proceeds. *See, e.g., In re Wells*, 382 B.R. at 360; *In re Spitler*, 213 B.R. at 999.

We agree with the majority view. Technology masks the processes involved here. Separating them into constituent elements reveals a sequence of events, not just one: Debtors drew on their Capital One line of credit; that draw converted available credit into a loan; Debtors directed Capital One to use the loan proceeds to pay MBNA; and Capital One complied. It is essentially the same as if Debtors had drawn on their Capital One line of credit, deposited the proceeds into an account within their control, and then wrote a check to MBNA. The latter is clearly a preference. *In re Ogden*, 314 F.3d at 1199; *see also Flatau v. Walman Optical Co. (In re Werner)*, 365 B.R. 283, 287 (Bankr. M.D. Ga. 2007). That case involved constructive[4] rather than physical possession and took

---

[4] At bottom constructive possession is a convenient way to describe a right or ability to control personal property or an interest in it.

> Constructive possession of personal property by its owner exists where the owner has [i]ntentionally given the [a]ctual possession - namely, the direct physical control - of the property to another for the purpose of having him do some act [f]or the owner to or with the property; that is to say, constructive possession exists wholly in contemplation of law without possession in fact. If the controlling reason or primary purpose for which the surrender of possession is made belongs to the owner, he retains constructive possession. Where the owner retains constructive possession, the party to whom bare physical control of the property has been entrusted for the owner's purpose does not have possession but only custody.

*Jacobson v. Aetna Cas. & Sur. Co.*, 46 N.W.2d 868, 871 (Minn. 1951); *see also* 63C AM. JUR. 2D *Property* § 30 ("One may have possession of [personal property], even in the absence of actual personal custody, if the [property] is under his or her control and in a place where it must have been put by his act or in his or her behalf, or where the [property] is within his or her power in such a sense that he or she can and does command its use.").

place electronically rather than mechanically (through deposit slips and checks) is of no moment. In both scenarios, debtors obtained an interest in the loan proceeds even if the interest was only fleeting. An ability to control, made manifest, must equate to physical control. *See In re Spitler*, 213 B.R. at 999 (stating it is "the substance of the transfer, not its form, [which] is dispositive" as to whether a debtor has the ability to control the distribution of credit proceeds) (quotations omitted). The Debtors' exercise of their ability to control the disposition of the loan proceeds is the essence of this case.

Contrary to the district court's conclusion, there is no evidence Capital One could have stopped the payments to MBNA once it honored Debtors' draw. The payments were a debtor's discretionary use of borrowed funds to pay another debt. Such transactions are generally considered preferential transfers. *See In re Ogden*, 314 F.3d at 1199. The only exception to this rule is the earmarking doctrine, which the district court incorrectly applied.

Earmarking, even if extended beyond the codebtor context,[5] only applies

when the lender requires the funds be used to pay a specific debt. *See In re*

*Dilworth*, 383 B.R. 415, 418 (Bankr. N.D. Ohio 2007); *In re Fox*, 382 B.R. at

803; *In re Getman*, 218 B.R. at 493-94. Here, Capital One placed no conditions

on Debtors' use of the funds, it only honored their instructions. The earmarking

doctrine is inapplicable.

And Debtors' exercise of control of the loan proceeds also distinguishes

this case from a bank-to-bank transfer of consumer debt, in which one bank

simply agrees to purchase consumer debt from another bank. A debtor is not

directly involved, let alone in control—a notice comes to the debtor redirecting

required payments to the acquiring institution. Moreover, there was no agreement

between Capital One and MBNA for the purchase of Debtors' paper.

---

[5] The judicially-created earmarking doctrine was originally limited to codebtor cases, *i.e.*, cases in which the lender who provides the funds to the debtor to pay off the creditor was also obligated to the creditor either as a guarantor or surety. *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000). In such cases, there were three rationales for why such payments were not voidable by the Trustee: (1) the lender's payment to the creditor did not constitute a transfer of the debtor's property; (2) no diminution of the debtor's estate occurred since the debtor's new obligation to the lender was equal to the amount the debtor had owed to the creditor; and (3) to prevent unfairness to the lender—if its payment to the creditor was avoided and the money was recaptured for the bankruptcy estate, the lender, as guarantor, would forfeit that money but remain obligated to the creditor. *Id.* at 646. Eventually this doctrine was extended to cases in which the lender was not a guarantor or surety but rather provided funds to the debtor for the purpose of paying a specific indebtedness. *Id.*

In *In re Moses*, the Tenth Circuit Bankruptcy Appellate Panel concluded the earmarking doctrine should not have been extended beyond the codebtor context. *Id.* at 651. We need not resolve the issue here because even if so extended, it does not apply in this case.

We also consider whether Debtors' transfer of the Capital One loan proceeds to MBNA diminished the bankruptcy estate. It did. The net value of the estate did not change because the Capital One infusion of loan proceeds was totally offset by additional debt to Capital One. But that is not the relevant test. We must ask whether the loan proceeds "would have been part of the estate had [they] not been transferred before the commencement of bankruptcy proceedings." *Begier*, 496 U.S. at 58. The Capital One loan proceeds were an asset of the estate for at least an instant before they were preferentially transferred to MBNA.[6] The preferential transfer look back is not time sensitive—the issue is whether any asset, regardless of how fleeting its presence in the bankrupt's estate during the relevant period of time, should be ratably apportioned among qualified creditors or permitted to benefit only a preferred creditor. The answer is as clear as the statute itself—all preferential transfers of estate assets during the ninety-day look back are subject to recapture.

In reaching the opposite conclusion, the district court and bankruptcy court mistakenly characterized the transferred property as untapped credit. In their

---

[6] The moment Capital One honored Debtors' draw on their line of credit those proceeds (the newly loaned funds) became an asset of Debtors' estate. A short time (perhaps only a nanosecond) later the assets were dissipated by the transfers to MBNA. The loan proceeds, like all preferential transfers, were not in the hands of Debtors when the bankruptcy petition was filed. But because of the preferential transfer statute, we must determine whether the proceeds were part of Debtors' estate at <u>any</u> time during the ninety-day look back. They were part of the bankruptcy estate immediately before being transferred to MBNA. The additional debt which accompanied the Capital One transactions is not relevant to our preference analysis, which concerns only assets.

view untapped credit cannot be used to satisfy creditors and, thus, no diminution of the estate occurred. *See In re Wells*, 382 B.R. at 360-62. But this case does not involve untapped credit. A transfer of loan proceeds (an asset) diminishes the bankrupt's estate.

Treating the payments to MBNA as avoidable preferential transfers furthers § 547(b)'s policy of equality of distribution between similarly situated creditors. Recapture allows all qualifying creditors, including Capital One and FIA, to ratably share in a $38,000 estate asset. *Id.* at 361; *see also In re Fox*, 382 B.R. at 804.

We **REVERSE** and **REMAND** to the district court for further proceedings consistent with this opinion.