RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0118p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: JEANNETTE L. DILWORTH,

                                *Debtor.*

_____

LOUIS J. YOPPOLO, Trustee,

                       *Plaintiff-Appellee,*

        *v.*

MBNA AMERICA BANK, N.A,

                    *Defendant-Appellant.*

No. 08-3389

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Toledo.
No. 05-75071—Richard L. Speer, Bankruptcy Judge.

Submitted: December 12, 2008

Decided and Filed: March 27, 2009

Before: KENNEDY and BATCHELDER, Circuit Judges; THAPAR, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Lawrence G. Reinhold, WEINSTEIN & RILEY, Huntington Woods, Michigan, for Appellant. Louis J. Yoppolo, SHINDLER, NEFF, HOLMES, SCHLAGETER & MOHLER, Toledo, Ohio, for Appellee.

_____

## OPINION

_____

    ALICE M. BATCHELDER, Circuit Judge. In this appeal we are asked to decide whether the bankruptcy court erred by holding that a certain bank-to-bank transfer of

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

funds was a preference within the meaning of 11 U.S.C. § 547.  Because we conclude that the transfer in fact diminished the debtor's assets and the "earmark" doctrine does not apply, and therefore the transfer was of an interest of the debtor in the property, we affirm the judgment of the bankruptcy court.

## I.

On August 22, 2005, Jeannette Dilworth used a balance transfer check drawn on her CitiPlatinum Select Card, to pay the credit card balance of $10,500 on her MBNA credit card; in other words, Citi paid $10,500 to MBNA on Dilworth's behalf, paying the entirety of her debt to MBNA.  Ms. Dilworth filed for bankruptcy 53 days later.

The bankruptcy court appointed a Trustee who, on June 23, 2006, filed a complaint to avoid the balance transfer as "preferential," pursuant to 11 U.S.C. § 547(b), and to recover, pursuant to 11 U.S.C. § 550(a), the $10,500 from MBNA.  The bankruptcy court granted summary judgment to the Trustee, holding that the MBNA-to-Citi transfer was "preferential," and therefore, voidable.  MBNA appealed to the Bankruptcy Appellate Panel (BAP), which affirmed.  MBNA appealed to this court.

## II.

In appeals from the BAP, we review the bankruptcy court's decision, examining findings of fact for clear error and conclusions of law *de novo*.  *In re Copper*, 426 F.3d 810, 812 (6th Cir. 2005).  This appeal concerns a statutory construction, a legal conclusion that we review *de novo*.  *See id*.

Whether a bank-to-bank transfer of funds is a "preference" is governed by 11 U.S.C. § 547.  That provision says:

> Except as [otherwise] provided . . . , the [bankruptcy] trustee may avoid
> any transfer of an interest of the debtor in property - -
>
> (1)     to or for the benefit of a creditor;
>
> (2)     for or on account of an antecedent debt owed by
>          the debtor before such transfer was made;
>
> (3)     made while the debtor was insolvent;

(4)     made . . . on or within 90 days before the date of
        the filing of the petition; . . . and

(5)     that enables such creditor to receive more than
        such creditor would receive if - -

        (A)     the case were a case under chapter
                7 of this title;

        (B)     the transfer had not been made;
                and

        (C)     such creditor received payment of
                such debt to the extent provided
                by the provisions of this title.

11 U.S.C. § 547(b). MBNA does not dispute that the transfer in question satisfies subsections (b)(1) through (b)(5) of the statutory test. Rather, MBNA contends that the transfer from Citi to MBNA was not a "transfer of an interest of the debtor in property" because the transfer did not diminish the debtor's assets or because, under the earmarking doctrine, the funds were not actually the property of the debtor. Therefore, MBNA argues, the statute does not apply.

The bankruptcy court first addressed MBNA's contention that the debtor had simply used the balance transfer check to substitute one creditor for another, and therefore, the transfer did not diminish the estate. Citing *In re Hartley*, 825 F.2d 1067, 1070 (6th Cir. 1987), the bankruptcy court noted that the determinative factor in the diminution-of-estate analysis is the degree of control exercised by the debtor over the distribution of the funds. The bankruptcy court said:

> [Dilworth] demonstrated significant, if not total control over the distribution of the funds when she decided to pay [MBNA], and not her other creditors. The key here is that [Dilworth] could have chosen to direct the funds to other creditors. . . . Such an ability to direct the funds necessarily constitutes a sufficient degree of control, such that the funds became a part of her estate. Therefore, the transfer of these funds resulted in a diminution of the value of her bankruptcy estate.

The bankruptcy court's conclusion is well supported in this circuit, particularly by our reasoning in the case of *In re Montgomery*, 983 F.2d 1389, 1394 (6th Cir. 1993), where, in the context of a check-kiting scheme, we explained: "In economic substance the

result was the same as if [the bank] had handed [the debtor] currency which he promptly handed back for application against his debt." So it is in Dilworth's case. It was Dilworth who decided to whom the Citi funds would be paid by way of the balance transfer check and the economic result is the same as if Citi had handed her currency that she immediately handed over to MBNA. We find no error in the bankruptcy court's application of our precedent to conclude that the transfer from Citi to MBNA resulted in a diminution of value in the bankruptcy estate.

Turning to the earmarking doctrine, the bankruptcy court explained that "[t]he earmarking doctrine is an equitable doctrine by which the use of borrowed funds to discharge a debt is deemed not to be a transfer of property of the debtor, and therefore not voidable." The bankruptcy court went on to explain that "[t]he basic facet of the earmarking doctrine is that the lender, not the debtor, decides which creditor will receive the proceeds of the loan." *See Montgomery*, 983 F.2d at 1394; *see also Hartley*, 825 F.2d at 1069 (describing "the 'earmark' rule" as holding that "funds loaned to a debtor that are 'earmarked' for a particular creditor do not belong to the debtor because he does not control them"). And earmarked funds, the bankruptcy court said, do not become part of the debtor's estate. Hence, their transfer would not disadvantage other creditors.

MBNA argues that these funds fall within the earmarking doctrine: "[w]hen a third person loans money to a debtor specifically to enable [the debtor] to satisfy the claim of a designated creditor, the general rule is that the proceeds are not the property of the debtor, and therefore the transfer of the proceeds to the creditor is not preferential." Appellant's Br. at 8 (citing *Hartley*, 825 F.2d at 1070). The Trustee responds that, "[b]ecause [Dilworth] controlled disposition of the funds and determined to use those funds to pay MBNA, the funds were property of [Dilworth]," Appellee's Br. at 9-10, and "[b]ecause CitiBank did not direct or require that the funds be paid to MBNA, the earmarking doctrine is inapplicable," Appellee's Br. at 11.

The bankruptcy court found that it was the debtor, not the lender, who decided which creditor would receive the proceeds. MBNA, we note, has never claimed that Citi directed that the $10,500 payment be made to MBNA, or, for that matter, that anyone

other than Dilworth made that decision. And, for the reasons explained in *Montgomery*, the funds transferred by Citi to MBNA did in fact become part of Dilworth's estate, and their transfer did in fact diminish that estate. Hence, as the bankruptcy court correctly held, the earmarking doctrine does not apply.

Finally, we note, as did the BAP, that this result is not new to MBNA. In the case of *In re Wells*, 382 B.R. 355, 358-59 (B.A.P. 6th Cir. 2008), MBNA made a virtually identical claim with regard to pre-petition payments made at the direction of the debtor, through the use of convenience checks drawn on the debtor's credit account at Chase Bank USA, to pay off the balance on the debtor's MBNA credit card. In that case, MBNA argued:

> (1) that Debtor has no property interest in funds that are the subject of a bank to bank transfer, (2) that the earmarking doctrine applies such that the transferred funds do not constitute property of Debtor, and (3) that because there was no diminution of the estate, there can be no preferential transfer.

*Wells*, 382 B.R. at 359. The BAP, citing *Montgomery*, soundly rejected the claim and found that the bank-to-bank transfers were preferences under 11 U.S.C. 547(b). *Id*. at 359-61; *see also In re Marshall*, 550 F.3d 1251, 1256 (10th Cir. 2008) (citing *Wells*, 382 B.R. at 361).

Because the funds transferred by Citi to MBNA at Dilworth's direction were not earmarked funds and because their transfer diminished the bankruptcy estate, those funds were property in which Dilworth had an interest. The bankruptcy court did not err in holding that the transfer was preferential and therefore voidable by the Trustee.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the bankruptcy court.