**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**June 4, 2019**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

---

IN RE ERIC THEODORE
WAGENKNECHT and SUSAN
ELIZABETH COLBERT,

Debtors.

BAP No. CO-18-093

---

STEVENS, LITTMAN, BIDDISON,
THARP & WEINBERG, LLC,

Defendant - Appellant,

v.

JARED WALTERS, Trustee,

Plaintiff - Appellee.

Bankr. No.16-10419
Adv. No. 18-01018
Chapter 7

OPINION*

---

Appeal from the United States Bankruptcy Court
for the District of Colorado

---

Before **SOMERS**, **MOSIER**, and **MARKER**,[1] Bankruptcy Judges.

**SOMERS**, Bankruptcy Judge.

The subject of this appeal is the prepetition payment of the debt owed by

Eric Wagenknecht (the "Debtor") to the defendant law firm, Stevens, Littman,

Biddison, Tharp & Weinberg, LLC (the "Law Firm"), by the Debtor's mother,

who simultaneously with the transfer received a promissory note from the Debtor

---

*This unpublished opinion may be cited for its persuasive value, but is not
precedential, except under the doctrines of law of the case, claim preclusion, and
issue preclusion. 10th Cir. BAP L.R. 8026-6.

[1]Joel T. Marker, U.S. Bankruptcy Judge, United States Bankruptcy Court
for the District of Utah, sitting by designation.

in the amount of the payment. Jared Walters, the Chapter 7 Trustee (the "Trustee"), filed a complaint against the Law Firm to avoid the transfer as a preferential transfer pursuant to 11 U.S.C. § 547(b).[2] The Law Firm moved for summary judgment, contending that the transfer was not of an interest of the Debtor in property. The Trustee filed a cross motion for summary judgment. The Bankruptcy Court found there were no material facts in controversy, held the transfer was preferential, denied the Law Firm's motion, and granted the Trustee's motion. The Law Firm appeals. This panel **AFFIRMS**.

## I.    Facts

Prior to the petition date, the Law Firm provided legal services to the Debtor. By the end of 2015, the Debtor owed the Law Firm at least $20,000. Sharon Wagenknecht is the mother of the Debtor. On January 11, 2016, the Debtor executed a promissory note (the "Note") in which he promised to pay his mother $21,672.65. On or about January 14, 2016, the Debtor's mother paid $21,672.65 to the Law Firm.

The Debtor and his spouse filed a Chapter 13 petition on January 29, 2016. In the Statement of Financial Affairs, in response to the question of whether during the 90 days before filing any creditor was paid more than $600, the Debtor stated that a payment of $20,000 for legal services was made in January 2016 "by Sharon Wagenknecht on behalf of Debtor."[3] The Debtor and his spouse voluntarily converted their case to Chapter 7 on April 28, 2017, and Jared Walters was appointed the Trustee. On January 18, 2018, the Trustee initiated an adversary proceeding against the Law Firm, seeking to avoid and recover the $21,672.65 that was paid to the Law Firm.

On April 24, 2018, the Law Firm filed its motion for summary judgment.

---

[2] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[3] *Statement of Financial Affairs* at 3, *in* Appellant's App. at 66.

The statement of uncontroverted facts recited the basic facts stated above—the existence of the debt, the Debtor's execution of the Note, and Ms. Wagenknecht's payment to the Law Firm. Those facts were supplemented by statements that relied upon an affidavit of Ms. Wagenknecht that stated in material part:

5. I agreed to loan Debtor $21,672.65 for the sole purpose of paying the Law Firm's bill.

6. On or about January 11, 2016, Debtor signed and delivered to me a promissory note in the amount of $21,672.65.

7. On or about January 14, 2016, I wrote a check in the amount of $21,672.65 directly to the Law Firm. The check was written on an account at Alpine Bank in my name alone. Debtor holds no interest in my account at Alpine Bank.

8. I transmitted the check directly to the Law Firm on or about January 14, 2016.

9. The amount of the check exactly matches the amount of the promissory note that Debtor signed and gave to me.

10. My loan to Debtor of $21,672.65 was not a "general loan" to him. I required, as a requirement and condition of the loan, that the entire $21,672.65 be used exclusively to pay the specific debt owed to the Law Firm and for no other purpose. Again, the loan was not a general line of credit that Debtor could have used however he wanted or desired. I would not have made this loan unless the funds were used exclusively to pay the Law Firm. At no time did Debtor have possession, dominion, or control over the loan proceeds nor could he direct how those proceeds were used, applied, or distributed.[4]

The Law Firm argued, as a matter of law, that there was not a transfer of an interest of the Debtor, and the estate was not diminished by the payment to the Law Firm.

The Trustee filed a combined response and cross motion for summary judgment. He controverted the factual statement that relied on paragraphs 5 and 10 of the affidavit and disputed the admissibility of the affidavit. In reliance on

---

[4] *Affidavit of Sharon Wagenknecht*, *in* Appellant's App. at 17.

*Marshall*,[5] a Tenth Circuit case holding that the payment of a credit card balance through a loan from a new credit card lender was preferential, the Trustee argued that the Debtor had an interest in the transferred funds and the transfer was therefore an avoidable preference.

The Bankruptcy Court held in favor of the Trustee on both issues. It ruled that the affidavit was inadmissable under the parol evidence rule holding that the Note was a fully integrated agreement and if Ms. Wagenknecht intended to restrict the Debtor's use of the loan proceeds she should have insisted that the restriction be included in the Note. After concluding the terms of the loan were limited to the text of the Note, the Bankruptcy Court then held the Debtor had an interest in and controlled the funds transferred to the Law Firm such that the transfer was preferential under the reasoning of *Marshall*. The Bankruptcy Court also rejected the Law Firm's reliance on the earmarking defense, finding the doctrine is limited to a codebtor situation and therefore barred as a matter of law, even if the facts in the affidavit were considered.

## II.    Jurisdiction

With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit.[6] The Law Firm timely filed a notice of appeal from the order entering judgment in favor of the Trustee. Neither party in this case elected for this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

## III.  Issues and Scope of Review

---

[5]*Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251 (10th Cir. 2008).

[6]28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.

There are two issues on appeal: (1) whether the Bankruptcy Court erred in excluding Ms. Wagonknecht's affidavit submitted by the Law Firm in conjunction with its motion for summary judgment; and (2) whether the Bankruptcy Court erred when granting summary judgment to the Trustee on his claim to avoid and recover as preferential the payment by Ms. Wagonknecht to the Law Firm.

The scope of review of both issues is de novo. "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[7] As to the first issue, "[w]hether a contract is partially integrated . . . such that resort to parol evidence by the [trial] court was proper is generally a question of law that we review de novo."[8] Likewise, as to issue two, a bankruptcy court's grant of summary judgment is reviewed "*de novo*, applying the same legal standard as was used by the bankruptcy court."[9]

> Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[10]

## IV. Analysis

### a. The parol evidence rule does not preclude the admission of the facts stated in Ms. Wagonknecht's affidavit.

---

[7] *Expert S. Tulsa, LLC v. Cornerstone Creek Partners, LLC (In re Expert S. Tulsa, LLC)*, 534 B.R. 400, 408 (10th Cir. BAP 2015) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[8] *Soc'y of Lloyd's v. Bennett*, 182 F. App'x. 840, 845, 2006 WL 1524621, at *3 (10th Cir. June 2, 2006) (first citing *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 832 (10th Cir. 2005), and then citing *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1131 (7th Cir. 1994)).

[9] *In re Expert S. Tulsa, LLC*, 534 B.R. at 408 (citing *Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 477 B.R. 176, 180 (10th Cir. BAP 2012), *aff'd sub nom. Jubber v. Bank of Utah (In re C.W. Mining Co.)*, 749 F.3d 895 (10th Cir. 2014).

[10] *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

Federal Rule of Civil Procedure 56 ("Civil Rule 56") governing summary judgment is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Subsection (c)(1)(a) of Civil Rule 56 provides that a party asserting that a fact cannot be disputed must support the fact by citing to particular parts of material in the record, including affidavits made for purposes of the motion only. Subsection (c)(2) provides that a party may object that the affidavit "cannot be presented in a form that would be admissible in evidence."[11] In this case, the Law Firm's position was that facts about the circumstances of making the loan, which were supported by the affidavit, were undisputed. The Trustee objected on the basis that the affidavit was inadmissable under the parol evidence rule. The Bankruptcy Court agreed.

The parol evidence rule is a substantive rule of law requiring the application of Colorado law.[12] In Colorado, "the parol evidence rule does not bar admission of oral representations which are not inconsistent with the terms of the final written instrument and are not of the type that one would necessarily expect to be incorporated into the final agreement."[13] Consistent with the forgoing principle, the Restatement (Second) of the Contracts rejects

> the assumption sometimes made that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon. Even though there is an integrated [complete] agreement, consistent additional terms not reduced to writing may be shown, unless the court finds that the

---

[11] Fed. R. Civ. P. 56(c)(2).

[12] *Monus v. Colo. Baseball 1993, Inc.*, No. 95-1099, 1996 WL 723338, at *12 (10th Cir. Dec. 17, 1996) (citing *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995)); *Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011) ("The parol evidence rule is a principle of contract law, rather then a rule of evidence.").

[13] *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) (en banc). In other words, the parol evidence rule allows oral representations which are consistent with the terms of the final written contract and are of the type that would not typically be expected to be in the written agreement.

writing was assented to by both parties as a complete and exclusive statement of all the terms.[14]

A written document cannot of itself prove its own completeness.[15]

In this case, the written agreement is the Note, which appears to be a negotiable instrument under article 3, section 104 of the Uniform Commercial Code. "[T]he courts, though professing to apply the same doctrine with reference to parol evidence when negotiable instruments are concerned as when other written contracts are in question, have, nevertheless, frequently been more ready, when the controversy involved no holder in due course, to admit parol evidence of collateral agreements."[16]

In the circumstances of this case, the statements in the affidavit are not inconsistent with the Note, which appears to be a form contract prepared by the Debtor and/or his mother. The first paragraph of the Note is a promise by the Debtor to pay his mother $21,672.65 with no interest. The Note then states that payment is due upon demand, the Note is secured by personal property,[17] the Debtor has the right to prepay, the Debtor promises to pay collection costs, default is any one of eight events, the provisions of the Note are severable, and various "boiler plate" terms are applicable. There is no integration clause. Although the Note obligates the Debtor to make payment for value received, it does not identify the value or reflect any obligation of his mother to extend value. The Note is silent about the matters included in the affidavit. Under the circumstance of this

---

[14] Restatement (Second) of Contracts § 210 cmt. a (Am. Law Inst. 1981).

[15] *Id.* cmt. b.

[16] 11 Williston on Contracts § 33:37 (4th ed. 2019). *McCaffrey v. Mitchell*, 56 P.2d 926, 928 (Colo. 1936) (explaining the principle stated).

[17] If the Note constituted a grant of a security interest, that interest was unperfected. Neither of the parties have addressed this portion of the Note, which the panel will not further consider.

case where the loan advance was being made by a check payable to the Debtor's creditor (rather than to the Debtor), there was no need to commit the restrictions on the use of the loan proceeds to writing.

We therefore conclude the Bankruptcy Court erred when ruling that the affidavit was inadmissable under the parol evidence rule.[18] The Note was not a fully integrated agreement, and the affidavit was offered to provide additional, consistent terms which were not included in the Note.

### b. Under *Marshall*, as a matter of law, the Debtor had an interest in the funds transferred to the Law Firm and the transfer may be avoided, even if the facts stated in the affidavit are considered.

A "preference" is a term of art in the Bankruptcy Code, and preferential transfers are governed by § 547 of the Code. Under § 547(b):

> a transfer is avoidable if it: (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or on account of an antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor is insolvent; (5) is made on or within ninety days before the date the bankruptcy petition was filed; and (6) allows the creditor to receive more than the creditor would otherwise be entitled to receive from the bankruptcy estate.[19]

The only element of the Trustee's preferential transfer claim that is at issue is whether the payment to the Law Firm was a "transfer of an interest of the debtor in property."[20]

The Tenth Circuit Court of Appeals construed this element in *Marshall*, a

---

[18]Even though the affidavit is admissible, we may disregard the legal meaning of the following statement: "At no time did the Debtor have possession, dominion, or control over the loan proceeds." *Affidavit of Sharon Wagenknecht* at 1, *in* Appellant's App. at 17. *See CLC Creditors' Grantor Tr. v. Howard Sav. Bank (In re Commercial Loan Corp.)*, 396 B.R. 730, 740 (Bankr. N.D. Ill. 2008) (explaining any legal connotation of an expert's statement in an affidavit that entities acted as conduits would be disregarded).

[19] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).

[20] 11 U.S.C. § 547(b).

case factually similar to this case, where it held that a preferential transfer occurred when payment was made to the debtors' MNBA credit card account with borrowed funds advanced from their Capital One credit card account, even though the funds were paid directly to MNBA.[21] The Tenth Circuit started its analysis by observing that "interest of the debtor in property" is not defined by the Bankruptcy Code. Following the guidance of the United States Supreme Court in *Begier*,[22] the Tenth Circuit looked to the expansive definition of property of the estate in § 541 and determined that "the right to use an item or to control its use is a property interest."[23] The Tenth Circuit adopted two tests, the dominion/control test and the diminution of the estate test, to determine whether the transfer was of an interest of the debtor in property. Both tests were satisfied by the substitution of credit card balances. The dominion/control test was satisfied because the transaction was "essentially the same as if Debtors had drawn on their Capital One line of credit, deposited the proceeds into an account within their control, and then wrote a check to MBNA."[24] "The Debtors' exercise of their ability to control the disposition of the loan proceeds is the essence of this case."[25] The diminution of the estate test was satisfied because "[t]he Capital One loan proceeds were an asset of the estate for at least an instant before they were preferentially transferred

---

[21] *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251 (10th Cir. 2008).

[22] *Begier v. IRS*, 496 U.S. 53, 58-59 (1990).

[23] *Marshall*, 550 F.3d at 1255.

[24] *Id*. at 1256.

[25] *Id*. at 1257.

to MBNA."[26]  The fact that the net value of the estate did not change was not relevant.[27]

In this case, after holding that the terms of the loan were limited to the text of the Note, the Bankruptcy Court analyzed whether the Debtor had possession of the loan proceeds under the dominion/control and diminution of the estate tests as developed in *Marshall*.  When the facts stated in the affidavit were disregarded, the Bankruptcy Court concluded that the Debtor clearly had an interest in the property transferred.  Because this panel has concluded that the facts stated in the affidavit were erroneously excluded from consideration, we must revisit the "interest of the debtor in property" issue.

The following facts are uncontroverted: By the end of 2015, the Debtor owed the Law Firm over $20,000; the Debtor signed the Note to his mother for $21,672.65; and three days later, the Debtor's mother paid $21,672.65 to the Law Firm.  In his Statement of Financial Affairs, in response to the question of whether payments were made to creditors during the 90 days preceding filing, the Debtor stated that $20,000 was paid "by Sharon Wagenknecht on behalf of Debtor" to the Law Firm.[28]  We regard the facts stated in the affidavit concerning the circumstances under which the loan was made and the intent of the Debtor and Ms. Wagenknecht disputed,[29] but find that such dispute does not preclude

---

[26] *Id*. at 1258.

[27] *Id*.

[28] *Statement of Financial Affairs* at 3, *in* Appellant's App. at 66.

[29] Generally, "[t]he intent or state of mind of the parties to a transfer is not material to the general question of whether that transfer is a preference." *Johnson v. Barnhill (In re Antweil)*, 931 F.2d 689, 692 (10th Cir. 1991) (citing 4 *Collier on Bankruptcy* ¶ 547.01 (15th ed. 1990)).

summary judgment for the Trustee.[30]

As discussed above, the Tenth Circuit in *Marshall* adopted two tests for determining whether a transfer was of an interest of the debtor in property for purposes of to § 547(b). The first is the dominion/control test; and the second is the diminution of the estate test. In this case, the Debtor's exercise of his ability to control the loan proceeds is evidenced by his execution of the Note in which he agreed to pay his mother for a loan, the proceeds of which were transferred directly to his creditor.[31] The Debtor could have refused to accept a loan from his mother if the proceeds were not distributed to him, but he did not do so. In his Statement of Financial Affairs, the Debtor states that his mother paid the Law Firm on his behalf. There is no material distinction between *Marshall*, where debtors directed Capitol One to pay MBNA, and this case, where the Debtor agreed to a loan from his mother with the proceeds being transmitted to the Law Firm.

The Law Firm attempts to distinguish this case from *Marshall* by reference

---

[30] Although the affidavit appears to have been drafted to satisfy the conditions for application of the earmarking doctrine, we do not address whether that doctrine would provide a defense. The doctrine was asserted in the Law Firm's answer, and its summary judgment pleadings. The Bankruptcy Court found the doctrine inapplicable as a matter of law. It expressly adopted the dicta in *Manchester v. First Bank & Tr. Co. (In re Moses)*, 256 B.R. 641, 645 (10th Cir. BAP 2000) and the holding of *Kerst v. Wray State Bank (In re Kerst)*, 347 B.R. 418, 421-22 (Bankr. D. Colo. 2006) that the earmarking doctrine is limited to codebtor situations. Debtor and Ms. Wagenknecht were not codebtors of the Law Firm.
Application of the earmarking doctrine is not an issue on appeal. While arguing that the parol evidence rule does not exclude the affidavit, the Law Firm's briefs do not urge reversal of the Bankruptcy Court's rejection of the earmarking defense, and at oral argument counsel for the Law Firm stated the issue has been waived. Further, because this Court is bound by its prior published decisions, we are not free to reconsider the *Moses* decision, under which earmarking is not an available defense in this case. Tenth Circuit BAP Local Rule 8026-6. That is for the Tenth Circuit to address.

[31] *See In re Moses*, 256 B.R, at 645 ("Upon execution of the Trust Note, the debtor had a legal and an equitable interest in the Trust Loan proceeds, and the Transfer to the Bank diminished the debtor's estate.").

-11-

to the statement in *Marshall* that "[t]he payments were a debtor's discretionary use of borrowed funds to pay another debt."[32] The emphasis is on the phrase "discretionary use." The argument is that if the facts in the affidavit are true, the Debtor's mother, not the Debtor, determined the use of the borrowed funds. But this interpretation ignores the Debtor's role in the transaction. If the transferred funds had been a gift, the Debtor would have had no control. But a gift was not made. We do not find *Marshall*'s use of the phrase "discretionary use" material to the Tenth Circuit's control analysis. What matters is that borrowed funds were used to pay the Debtor's creditor.

As to diminution of the estate, the *Marshall* opinion recognized that the net value of the estate did not change as a result of the transfer because there was in essence a substitution of unsecured creditors. But the Tenth Circuit concluded that "[a] transfer of loan proceeds (an asset) diminishes the bankrupt's estate."[33] There were no facts in *Marshall* to support this finding; it appears to be a rule of law based upon the purpose served by recovery of preferential transfers. As the Tenth Circuit stated, "the issue is whether any asset, regardless of how fleeting its presence in the bankrupt's estate during the relevant [lookback] period of time, should be ratably apportioned among qualified creditors or permitted to benefit only a preferred creditor."[34]

In this case, a creditor of the Debtor was paid with loan proceeds, and under the reasoning of *Marshall*, the estate was diminished. If it were uncontroverted that the Debtor's mother would not have made the loan for any purpose other than to pay the Law Firm, the result would not change. *Marshall* rejects measuring the diminution of the estate by considering whether the Debtor would have received

---

[32] *In re Marshall*, 550 F.3d at 1257.

[33] *Id*. at 1258.

[34] *Id*.

the loan proceeds if they had not been paid directly to the creditor in favor of a rule that the transfer of loan proceeds diminishes the estate.

The foregoing applications of the dominion/control test and the diminution of the estate test are strained, but they are required by *Marshall*. That decision is based upon legal fictions, not reality. Those fictions allowed the Tenth Circuit to follow the "general rule[] [that,] under § 547(b), a debtor's transfer of borrowed funds constitutes a preferential transfer of the debtor's property, assuming that the other elements of that section are met."[35]

For the foregoing reasons, we affirm the Bankruptcy Court's holding the transfer of $21,672.65 to the Law Firm by Sharon Wagenknecht of behalf of the Debtor was a preferential transfer under *Marshall*.

## V. Conclusion

For the foregoing reasons we reverse the Bankruptcy Court on the parol evidence rule issue. We also hold that erroneous ruling was harmless because the Trustee is nevertheless entitled to summary judgment on the preferential transfer issue. Judgment in favor of the Trustee granting his motion for summary judgment and denial of the Law Firm's motion for summary judgment are therefore **affirmed.**

---

[35] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1199 (10th Cir. 2002) (citing *In re Smith*, 966 F.2d 1527, 1537 (7th Cir. 1992)).